1  SCOTT A. FLAXMAN (SBN 241285)
   **SCOTT FLAXMAN LAW**
2  200 Valley Drive, #13
   Brisbane, CA 94005
3  Telephone: (415) 571-0582
   Facsimile: (650) 952-0409
4  scottf@scottflaxmanlaw.com

5  **ATTORNEY FOR PLAINTIFF**

6                          E-filing

7

8

9              IN THE UNITED STATES DISTRICT COURT

               FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11                              Case No. **CV   08              2201**

12                              COMPLAINT FOR VIOLATION OF
                                FEDERAL REAL ESTATE SETTTLEMENT
13                              PROCEDURES ACT AND FEDERAL
                                RACKEETTER INFLUENCED AND
14                              CORRUPT ORGANIZATIONS ACT

15                              **DEMAND FOR JURY TRIAL**

16                                          )
                                            )
17  MAROUANE OUZIZ,                         )
                                            )
18                          Plaintiff,      )
                                            )
19  vs.                                     )
                                            )
20  CAPTIAL ONE SERVICES, GREGORY           )
                                            )
21  TEETER, INDIVIDUALLY AND AS AGENT       )
                                            )
22  FOR CAPITOL MORTGAGE CORPORATION        )
                                            )
23  AMANDA RAWLS, INDIVIDUALLY AND          )
                                            )
24  AS AGENT FOR CAPITOL MORTGAGE           )
                                            )
25  CORPORATION, KEVEN NAFAI,               )
                                            )

1   INDVIDUALLY AND AS AGENT FOR

2   CAPITOL MORTGAGE CORPORATION,

3   DAVID CALDERA, INDVIDUALLY AND AS

4   AGENT FOR GREENPOINT MORTGAGE

5   FUNDING,

6   Doe 1 through Doe 10,

7

8                           Defendants

9

10                   **PRELIMINARY STATEMENT**

11   1. This complaint is filed and these proceedings are instituted under the Real Estate

12      Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), seeking to recover

13      actual damages, treble damages, and court costs, by reason of Defendants' violations

14      of RESPA and Regulation X, 24 C.F.R. § 3500.1 et seq. ("Regulation X") and under

15      the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961  et seq.

16      ("RICO"), seeking to recover attorney fees, court costs and treble damages, by reason

17      of Defendants' violation of RICO.

18

19   2. This complaint is also brought to raise additional claims against Defendants for

20      breach of fiduciary duty and California Statutory, 'Deceit.'  This complaint seeks

21      actual damages and punitive damages for those claims as well.

22

23

24                   **JURISDICTION AND VENUE**

25   3. Personal jurisdiction over Defendants is proper before this Court.

4. Counts I and II of this action arise under and are brought pursuant to the Federal Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §2601 et seq. (hereinafter "RESPA"); thus, federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331.

4. Count III of this action arises under and is brought pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"); thus federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over the pendent state claims, set out in Counts III and IV pursuant to 28 U.S.C. § 1367.

6. Venue over the Defendants is proper before this Court pursuant to 28 U.S.C. §1391(b)(2) and 12 U.S.C. § 2614.

**STATUTORY FRAMEWORK OF RESPA**

7. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22nd, 1974.

8. Congress noted that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

1

2    9. One purpose of RESPA is "to effect certain changes in the settlement process for

3       residential real estate that will result ... in the elimination of kickbacks or referral

4       fees." 12 U.S.C. § 2601(b).

5

6    10. RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. §

7        2602(1).   RESPA initially applied only to certain first liens on residential real

8        property.  On October 28, 1992, the law was amended to cover subordinate liens and

9        loans used to prepay or pay off an existing loan secured by the same property. 12

10       U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

11

12   11. RESPA prohibits kickbacks and referral fees: "No person shall give and no person

13       shall accept any fee, kickback, or thing of value pursuant to any agreement or

14       understanding, oral or otherwise, that business incident to or a part of a real estate

15       settlement service involving a federally related mortgage loan shall be referred to any

16       person." 12 U.S.C. § 2607(a).

17

18   12. RESPA prohibits unearned fees: "No person shall give and no person shall accept

19       any portion, split, or percentage of any charge made or received for the rendering of a

20       real estate settlement service in connection with a transaction involving a federally

21       related mortgage loan other than for services actually performed."  12 U.S.C. §

22       2607(b).

23

24

25

13. RESPA requires that the lender provide to the borrower a settlement statement which shall "conspicuously and clearly itemize all charges imposed upon the borrower ... in connection with the settlement." 12 U.S.C. § 2603(a).

14. RESPA requires that the lender and mortgage broker provide to the borrower "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement." 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7.

15. The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ...the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)." 12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

16. The practice of lenders paying brokers yield spread premium payments to obtain business has been successfully challenged under RICO. RESPA requires the disclosure of such payments and prohibits the payment of illegal referral fees. A borrower can successfully plead a RICO claim when the payment of the premium is not disclosed, the cost of the premium is passed on to the borrower in the form of a higher interest rate and the broker represented that it would provide the lowest rate available.

1
2
3
4

## PARTIES

5
6
7
8
9

17. Plaintiff:

a. **MAROUANE OUZIZ** ("Mr. Ouziz"), an individual, is a 28 year old naturalized United States citizen. Mr. Ouziz is the general manager for an automated teller machine corporation.

10

18. Defendants:

11
12
13
14
15

a. **GREENPOINT MORTGAGE** ("Defendant GreenPoint") was, at all times relevant to this matter and upon information and belief, a corporation, doing business as GreenPoint Funding, GreenPoint Mortgage Funding and GreenPoint, through a branch office located at 100 Wood Hollow Drive, Novato, California 94945.

16
17
18
19
20
21

b. **CAPITAL ONE SERVICES**: ("Defendant Capital One") was, at all times relevant to this matter and upon information and belief, a corporation, with a wholly-owned subsidiary doing business as GreenPoint Mortgage and GreenPoint Funding and GreenPoint. Capital One Services corporate headquarters is located at: 1680 Capital One Drive, McLean, VA 22102.

22
23
24
25

c. **CAPITOL MORTGAGE CORPORATION.** ("Defendant Capitol Mortgage"), was, at all times relevant to this matter and upon information and belief, a corporation, with its main office at: 1540 Eureka Road, Suite #100, Roseville, California 95661.

1

2
3
4

    **d. GEGORY TEETER** ("Defendant Teeter"), an individual, was, at all times relevant to this matter, the designated officer and broker of Defendant Capitol Mortgage.

5
6
7
8

    **e. KEVIN NAFAI** ("Defendant Nafai"), an individual, upon information and belief, was, at all times relevant to this matter, either an employee of or an independent contractor working for Defendant Capitol Mortgage.

9
10
11
12

    **f. AMANDA RAWLS** ("Defendant Rawls"), an individual, was, upon information and belief, at all times relevant to this matter, either an employee of or an independent contractor working for Defendant Capitol Mortgage.

13
14
15

    **g. ANDREW J. GALE** ("Defendant Gale"), an individual, was, upon all times relevant to this matter, the designated officer of Defendant GreenPoint.

16
17
18

    **h. DOE 1 THROUGH DOE 10:** Plaintiff does not know the true names of Defendants named as Doe 1 through Doe 10.

19

**FACTS**

20
21
22
23

19. Mr. Ouziz is the owner of real property located at 95 Cleopatra Drive, Pleasant Hill, California 945823 (the "Property") where he also resides.

24
25

20. Upon information and belief, at all times material to this action, Defendant Teeter, Defendant Gale, Defendant Capital One, Defendant Capitol Mortgage, Defendant

GreenPoint and Doe 1 through Doe 10 made residential loans, including "federally related loans" as that phrase is defined by RESPA.

21. Upon information and belief, at all times material to this action, Defendant Teeter and Defendant Capitol Mortgage conducted business as a "mortgage broker" as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2. As such, Defendant Capitol Mortgage and Defendant Teeter, provided real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and at 24 C.F.R. § 3500.2.

22. On or about January, 2006 Mr. Ouziz discussed the possibility of refinancing the Property with Defendant Nafai.

23. Upon information and belief, at all times relevant herein, Defendant Nafai was acting as an agent and/or employee of Defendant Capitol Mortgage and Defendant Teeter.

24. Mr. Ouziz's only information and communication, prior to the date of loan closing, regarding the refinancing of the Property came from information supplied by Defendant Nafai either in person or by telephone.

25. Defendant Nafai agreed to serve as Mr. Ouziz's agent and to provide him with mortgage brokerage services in connection with Mr. Ouziz's desire to refinance the existing loans on the Property. In fact, Defendant Nafai represented to Mr. Ouziz that Defendant Nafai and Defendant Nafai's company, Defendant Capitol Mortgage, would assist Mr. Ouziz in obtaining the best possible loan with the best possible terms and lowest possible interest rate.

26. Mr. Ouziz was led to believe that the total fee ("Mortgage Broker Fee") Defendant Nafai, Defendant Teeter, Defendant Rawls and Defendant Capitol Mortgage would receive for the mortgage brokerage services in connection with the refinance of the Property would be "one point" or 1% of the total value of the loans: $6,120.00 (1% of $612,000). Mr. Ouziz's understanding was that the Mortgage Broker Fee was a fee earned by Defendant Nafai, Defendant Teeter, Defendant Rawls and Defendant Capitol Mortgage for their provision of mortgage services for Mr. Ouziz, i.e. the fee was for these Defendants working to get Mr. Ouziz the best possible loan with the best possible terms.

27. Mr. Ouziz was led to believe that there was to be a one-year prepayment penalty on his new loan.

28. Pursuant to 12 U.S.C. §§ 2604 and 2607, Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai were obligated to disclose fully all costs, expenses, and fees from others, and not to accept any kickbacks from others, associated with the "federally related mortgage loan" and Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai's provision of mortgage brokerage services.

29. Pursuant to 12 U.S.C. § 2603(a), Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai were obligated to provide a settlement statement that "conspicuously and clearly itemizes all charges imposed upon" Mr. Ouziz.

COMPLAINT FOR FEDERAL RESPA VIOLATIONS - 9

30. Defendant Rawls provided to Defendant Teeter, Defendant Capitol Mortgage, Defendant GreenPoint and Defendant Capital One, loan application information and paperwork necessary to secure a "federally related mortgage loan."

31. Upon information and belief, the existing first loan on the Property was secured by a Deed of Trust with GMAC as the beneficiary. The existing second loan on the Property was secured by a Deed of Trust with Wells Fargo as the beneficiary.

32. Upon information and belief the loans supplied for the refinance were brokered by Defendant Capitol Mortgage and Defendant Teeter and funded by Defendant Capital One and Defendant GreenPoint. Funds from the refinance were paid out to GMAC in satisfaction of the First Trust Deed secured by the Property in the amount of $476,584.00. Funds were paid out to Wells Fargo in satisfaction of the Second Trust Deed secured by the Property in the amount of $89,132.00.

33. On or about June 20, 2006 Defendant Teeter, Defendant Rawls, Defendant Capitol Mortgage, Defendant Capital One, Defendant GreenPoint and Doe 1 through Doe 10 conducted a loan closing to consummate the residential loans to Mr. Ouziz from Defendant GreenPoint and Defendant Capital One, such loans being "federally related mortgage loans" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

34. Upon information and belief, the loan closing was conducted on June 20th, 2006 at 536 Mission Street, San Francisco, California 94105.

35. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by the Property and for personal, family or household purposes.

36. On June 20, 2006, Mr. Ouziz received a "Borrower Estimated Closing Statement" ("Closing Statement") A true and correct copy of the Closing Estimate is attached hereto as Exhibit A and by this reference is incorporated herein [*not reprinted herein*] and states, in relevant part,

'Lender pays YSP $12920.00 POC to Capitol Mortgage. . .

'Lender pays YSP $510.00 POC to Capitol Mortgage. . . .' (Closing Statement at 1).

37. On or about June 20, 2006, Defendant GreenPoint issued two, Settlement Charges Statements ("Settlement Statement"). Settlement Statement One is attached hereto as Exhibit B and by this reference is incorporated herein [*not reprinted herein*] which states in relevant part,

'Yield Spread Premium. . .Lender PD. . .$12,920.00'

38.    Settlement Statement Two is attached hereto as Exhibit C and by this reference is incorporated herein [*not reprinted herein*] which states in relevant part,

'Yield Spread Premium. . .Lender PD. . .$510.00'

39. Defendant GreenPoint and Defendant Capital One in fact paid these yield spread payment fees as kickbacks in connection with Defendant Nafai, Defendant Teeter,

Defendant Rawls and Defendant Capitol Mortgage's referral of Mr. Ouziz to Defendant GreenPoint and Defendant Capital One, for the purpose of making a "federally related mortgage loan" to Mr. Ouziz.

40. Defendant GreenPoint and Defendant Capital One's payment of this steering fee increased Mr. Ouziz's settlement costs. Defendant GreenPoint and Defendant Capital One arranged with Defendant Capitol Mortgage, Defendant Rawls, Defendant Nafai and Defendant Teeter to charge Mr. Ouziz a higher interest rate and to give him inferior loan terms, such as a three year prepayment penalty, so that Defendant GreenPoint and Defendant Capital One could make more money off of Mr. Ouziz. Defendants Capital One and GreenPoint kicked back some of this profit to Defendant Capitol Mortgage, Teeter, Nafai and Rawls in the form of the yield spread premium payments.

41. This fee for steering Mr. Ouziz into the more costly and oppressive loans was paid indirectly by Mr. Ouziz through a higher interest rate and with loan terms inferior to those which Mr. Ouziz could have otherwise received.

42. Defendant GreenPoint and Defendant Capital One paid this kickback pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Capitol Mortgage, Defendant Nafai, Defendant Rawls and Defendant Teeter to Defendant GreenPoint and Defendant Capital One.

43. At all times relevant herein, Mr. Ouziz, had no understanding and received no explanation of the fact that Defendant GreenPoint and Defendant Capital One paid this "yield spread premium" fee to Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai, and Defendant Rawls as a kickback.

44. Mr. Ouziz was led to believe that his loan would have at most a one-year prepayment penalty. On June 20, 2006, the date of the loan closing, GreenPoint issued for the first time a, "Prepayment Fee Allonge Statement" ("Allonge"), attached hereto as Exhibit D *[not reprinted herein]* which states in relevant part,

'This. . .Allonge is made this **twentieth** day of **June 2006,** and is incorporated into and intended to form a part of the note dated the same date. . .**Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

If I make a Prepayment within **three years** of the date of the Note, I will pay Prepayment fee. . ." (Allonge at 1).

45. Defendant GreenPoint and Defendant Capital One paid this fee or kickback pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls to Defendant GreenPoint and Defendant Capital One.

46. At all times relevant herein, Mr. Ouziz, had no understanding and received no explanation of the fact that Defendant GreenPoint and Defendant Capital One paid this

"yield spread premium" fee to Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls as a kickback for Defendants Capitol Mortgage, Teeter, and Rawls steering Mr. Ouziz to Defendants GreenPoint and Capital One for a higher-interest rate loan with a three year rather than a one-year prepayment penalty.

47. At all times relevant herein, Mr. Ouziz had no understanding and received no explanation of the fact that this "yield spread premium" fee was paid indirectly by Mr. Ouziz through a higher interest rate and inferior loan terms.

48. Neither Defendants Capitol Mortgage, Teeter, Nafai, nor Rawls disclosed to Mr. Ouziz that Defendant GreenPoint's and Defendant Capital One's payment of this "yield spread premium" fee to Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls constituted a kickback or referral fee at or prior to the time that Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls made the referral to Defendant GreenPoint and Defendant Capital One in connection with Defendant GreenPoint and Defendant Capital One making a "federally related mortgage loan" to Mr. Ouziz.

49. Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls never told Mr. Ouziz that there would be a three year prepayment penalty prior to the loan closing date on June 20th, 2006.

50.Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls never disclosed to Mr. Ouziz that the prepayment penalty had been expanded to three years in exchange for the yield spread premium kickback payments from Defendant

GreenPoint and Defendant Capital One to Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls.

## COUNT I

## RESPA VIOLATIONS

### (AGAINST DEFENDANT GREENPOINT AND DEFENDANT CAPITAL ONE)

51. All paragraphs of this complaint are incorporated herein as if fully restated.

52. Based on the foregoing facts, Defendant GreenPoint and Defendant Capital One violated RESPA with respect to Mr. Ouziz by:

53. giving or paying fees, kickbacks or other things of value to Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls to Defendant GreenPoint and Defendant Capital One in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(b); and

54. giving or accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c); and

55. failing to "clearly and conspicuously" itemize the charges on the Settlement Statement in connection with a transaction involving a federally related mortgage loan in violation of 12 U.S.C. § 2603(a).

56. Pursuant to 12 U.S.C. § 2607(d), Mr. Ouziz is entitled to recover, and hereby seeks to collect, from Defendant GreenPoint and Defendant Capital One an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Mr. Ouziz as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

## COUNT II

## RESPA VIOLATIONS

## (AGAINST DEFENDANT CAPITOL MORTGAGE, DEFENDANT TEETER, DEFENDANT NAFAI AND DEFENDANT RAWLS )

57. All paragraphs of this complaint are incorporated herein as if fully restated.

58. Based on the foregoing facts, Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai, and Defendant Rawls violated RESPA with respect to Mr. Ouziz by:

59. accepting fees, kickbacks or other things of value from Defendant GreenPoint and Defendant Capital One pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related

mortgage loans would be referred to Defendant GreenPoint and Defendant Capital One in violation of 12 U.S.C. § 2607(1) and 24 C.F.R. § 3500.14(b); and

60. giving or accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

61. failing to "clearly and conspicuously" itemize the charges on the Settlement Statement in connection with a transaction involving a federally related mortgage loan in violation of 12 U.S.C. § 2603(a).

62. Pursuant to 12 U.S.C. § 2607(d), Mr. Ouziz is entitled to recover, and hereby seeks to collect from Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai, and Defendant Rawls an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Mr. Ouziz, as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

## *COUNT III*

## *CIVIL RICO*

## *(AGAINST DEFENDANT GREENPOINT, DEFENDANT CAPITAL ONE, DEFENDANT TEETER, DEFENDANT NAFAI AND DEFENDANT RAWLS)*

63.Defendants Capitol Mortgage, GreenPoint Funding, Capital One, Teeter, Nafai and Rawls are individuals or entities capable of holding an interest in property and as such are persons as defined by 18 U.S.C. §1961(3).

64.Defendants Capitol Mortgage, GreenPoint Funding and Capital One are enterprises within the meaning of 18 U.S.C. §1961(4).

65.Defendant Capital One, Defendant GreenPoint engage in or conduct activities which affect interstate commerce, including but not limited to funding loans to borrowers in different states.

66. Defendant Capitol Mortgage engages in or conducts activities which affect interstate commerce, including but not limited to arranging for loans with lenders in different states.

67 Defendant Capital One via Defendant GreenPoint served as an umbrella for the activities of the various defendants who sought to obtain profits from Mr. Ouziz and others through fraud and other illegal conduct.

68. Defendant Capital One and Defendant GreenPoint Funding participated in the affairs of the enterprise through a pattern of racketeering activity or collection of unlawful debt in violation of 18 U.S.C. §1962(c), including, but not limited to:

  a.  fraudulently misrepresenting the true cost of credit in connection with each loan made to Mr. Ouziz and others;

  b.  making fraudulent advertising claims concerning the nature and terms of the loan transactions;

c.     fraudulently misrepresenting to Mr. Ouziz and others the terms of various loan
transactions for the purpose of concealing the disadvantageous nature of the
transactions;

69. The Defendants have acquired funds through the aforesaid racketeering activity which they have invested in the enterprise in violation of 18 U.S.C. §1962(a).

70. The defendants have conspired to participate in the affairs of the enterprise through a pattern of racketeering activity and collection of unlawful debt in violation of 18 U.S.C. §1962(d).

71. The defendants regularly use the United States mails in furtherance of said pattern of racketeering activity and collection of unlawful debt and to otherwise defraud Mr. Ouziz and others by: (including, but not limited to), obtaining credit information, contracts and payments by mail, mailing collection letters, mailing checks to distribute proceeds of the transactions, and mailing various credit applications and other documents.

72. The Defendants regularly use the interstate telephone system in furtherance of said pattern of racketeering activity and collection of unlawful debt and to otherwise defraud the Mr. Ouziz and others (including, but not limited to), making calls soliciting business and refinancing and making calls to obtain credit information and to arrange appointments to close loans.

73. Defendants' use of the mail and telephone as set forth above constitutes indictable mail fraud as defined by 18 U.S.C. §1341 and indictable wire fraud as defined by 18 U.S.C §1343.

74. The actions of the various defendants constitute a "pattern of racketeering activity" as defined by 18 U.S.C. §1961(5).

75. Mr. Ouziz and others were damaged by said violations of law.

## COUNT IV

### BREACH OF FIDUCIARY DUTY

### (DEFENDANT CAPITOL MORTGAGE, DEFENDANT NAFAI, DEFENDANT TEETER AND DEFENDANT RAWLS)

76. All paragraphs of this complaint are incorporated herein as if fully restated.

77. Upon information and belief, Defendant Capitol Mortgage and Defendant Teeter, collectively were the employer of or contracted with Defendant Nafai and had as their agent Defendant Nafai who solicited and intentionally induced the trust, confidence and reliance of Mr. Ouziz as home loan counselor and guide for Mr. Ouziz.

78.  Defendant Nafai, Defendant Teeter and Defendant Capitol Mortgage's role as mortgage broker for Mr. Ouziz created fiduciary duties owed by Defendant Nafai, Defendant Teeter and Defendant Capitol Mortgage to Mr. Ouziz.  These fiduciary duties were breached by the conduct set forth above, that was done for the sake of self-dealing and unjustified profits taken by Defendant Nafai, Defendant Teeter and Defendant Capitol Mortgage through the receipt of the "yield spread premium" fees.

79.  Mr. Ouziz is entitled to remedies that include imposition of a constructive trust upon the proceeds of the transaction as were paid to Defendant Capitol Mortgage, Defendant Teeter and/or Defendant Nafai, an order requiring disgorgement of all proceeds paid to Defendant Capitol Mortgage, Defendant Teeter and/or Defendant Nafai, punitive damages and to other legal and equitable remedies to be imposed jointly and severally upon Defendant Capitol Mortgage, Defendant Teeter and Defendant Nafai.

## *COUNT V*

### *DECEIT AS DEFINED IN CALIFORNIA CIVIL CODE* §§1709-1710
### *(AGAINST DEFENDANT CAPITOL MORTGAGE, DEFNDANT TEETER,*
### *DEFENDANT RAWLS AND DEFENDANT NAFAI)*

1

2

3      80.      All paragraphs of this complaint are incorporated herein as if fully restated.

4

5      81.      Upon information and belief, Defendant Capitol Mortgage, Defendant Teeter,

6    Defendant Rawls and Defendant Nafai made misrepresentations to Mr. Ouziz, as set forth above,

7    including but not limited to statements that Defendant Capitol Mortgage, Defendant Teeter,

8    Defendant Rawls and Defendant Nafai would act in Mr. Ouziz's best interest to obtain a loan

9    which would be to Mr. Ouziz's benefit and to obtain a loan with the best possible terms for Mr.

10   Ouziz. In fact, Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant

11   Nafai did not obtain a loan which was to Mr. Ouziz's benefit and in fact induced Mr. Ouziz to

12   accept a loan with a higher interest rate, and a longer prepayment penalty period than he could

13   have otherwise obtained so that Defendant Capitol Mortgage, Defendant Teeter, Defendant

14   Rawls and Defendant Nafai could receive a "yield spread premium" kickback.

15

16

17

18      82.      Defendant Nafai, Defendant Teeter, Defendant Rawls and Defendant Capitol

19   Mortgage misrepresented the amount that Defendant Nafai, Defendant Teeter, Defendant

20   Rawls and Defendant Capitol Mortgage were charging Mr. Ouziz for their services.

21

22

23

24      83.      Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and/or

25   Defendant Nafai suppressed the fact that the "yield spread premium" was a kickback payment

     and that ultimately Mr. Ouziz would end up paying for the improper kick-back through higher

interest rates, other loan fees, generally less favorable loan terms, such as, the three year pre-payment penalty rather than a one year pre-payment penalty as Mr. Ouziz had been led to believe he was contracting for.

84.     Defendant Capitol Mortgage, Defendant Teeter and Defendant Nafai were bound to disclose the nature of the kickback and the consequences to Mr. Ouziz but failed to do so.

85.     Defendant Ouziz was led to believe that the cost of the home loan brokerage services provided by Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai would be "one point" or 1% of the total value of the loans: $6,120.00 (1% of 612,000) and that the Defendant GreenPoint and Defendant Capital One would be paying this fee to Defendant Capitol Mortgage.

86.     In fact, the amount of the fee paid to Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and/or Defendant Nafai was $13,430.00 and, in fact, the fee paid to Defendant Capitol Mortgage, Defendant Teeter and/or Defendant Nafai was indirectly paid by Mr. Ouziz through higher interest rates on his loans and generally worse loan terms than Mr. Ouziz could have otherwise received.

87.     Defendant Capitol Mortgage's, Defendant Rawl's, Defendant Teeter's and Defendant Nafai's misleading acts and statements regarding Defendant Capitol Mortgage's, Defendant Rawl's, Defendant Teeter's and Defendant Nafai's products and services in fact did

mislead Mr. Ouziz and proximately damaged Mr. Ouziz by causing him to pay more for products (his home loans) and services (mortgage brokerage) than the amount originally purported to be the price of these products and services;

88.    By giving Mr. Ouziz the false impression that he was getting the best possible loan with the best possible terms; by fraudulently inducing Mr. Ouziz into accepting a loan that he would not have accepted had he known the nature of the kickback payments;

89.    By damaging Mr. Ouziz by slipping in a prepayment penalty 'Allonge' or contract addendum on the day of the loan closing after Mr. Ouziz had exerted a lot of time and energy in getting the new loan and had made plans, such as business arrangements in reliance on the loans at the agreed rate and terms such that Mr. Ouziz was forced to accept the day of loan closing changes made by the Defendants.

90.    California Civil Code § 1709 provides that:

One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

Deceit, within the meaning of CC § 1709, can take any of these forms (CC§1710):

i. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

COMPLAINT FOR FEDERAL RESPA VIOLATIONS - 24

ii. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

iii. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

iv. A promise, made without any intention of performing it.

91.    Defendant Rawls, Defendant Capitol Mortgage, Defendant Teeter and Defendant Nafai knew that their assertion regarding their fee and the true cost of their fee was false and Defendant Capitol Mortgage, Defendant Rawls, Defendant Teeter and Defendant Nafai had no reasonable ground for believing their assertion regarding the fee to be true.

92.    Defendant Capitol Mortgage, Defendant Teeter, Defendant Nafai and Defendant Rawls knew that their assertion that they would procure the best loan on the best terms for Mr. Ouziz was false and they had no reasonable ground for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender, Defendant GreenPoint and Defendant Capital One and in exchange for Defendant Nafai, Defendant Teeter, Defendant Rawls and Defendant Capitol Mortgage inducing Mr. Ouziz to contract to accept loans on worse terms than he could have possibly otherwise have gotten.

93.    Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai knew that their assertion that their fee would not exceed, "one point" was false and they had no reasonable ground for believing this assertion to be true as they accepted payment for the

COMPLAINT FOR FEDERAL RESPA VIOLATIONS ~ 25

1  "yield spread premium" which was a kick-back from the lender to Defendant Rawls, Defendant

2  Capitol Mortgage, Defendant Teeter and Defendant Nafai in the amount of $13,430.00 and that

3  this higher fee was actually going to be indirectly paid by Mr. Ouziz in the form of a higher

4  interest rate and more oppressive loan terms.

5

6

7

8  94.    Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant

9  Nafai knew that Mr. Ouziz did NOT understand the phrase, "yield spread premium" and

10  therefore were bound to disclose additional, explanatory information to Mr. Ouziz and were

11  bound to use terminology and language understandable to Mr. Ouziz as the "yield spread

12  premium" payment had a dramatic, material affect on the loans Mr. Ouziz received, causing him

13  to receive loans with higher interest rates and more oppressive loan terms.

14

15

16  95.    Defendant Capitol Mortgage, Defendant Rawls, Defendant Teeter and Defendant

17  Nafai promised that they would procure the best loan on the best terms for Mr. Ouziz. The

18  Defendants made this promise with no intention of performing it as they knew they would

19  receive a kick-back "yield spread premium" from the lender in exchange for inducing Mr. Ouziz

20  to contract to accept loans with higher interest rates and on worse terms than Mr. Ouziz could

21  have possibly otherwise have gotten.

22

23

24

25

COMPLAINT FOR FEDERAL RESPA VIOLATIONS - 26

96.    The acts of Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai as set forth above constitute Deceit under Cal. CC §§1709-1710 thereby entitling Mr. Ouziz to his actual damages, including but not limited to: loans at actual rates and on terms that do not include a cushion in profit for the yield spread premium payment.

## PRAYER FOR RELIEF

97.    WHEREFORE, Mr. Ouziz requests judgment and relief as follows:

a.    under Count I against Defendant GreenPoint and Defendant Capital One for treble damages and costs for RESPA violations;

b.    under Count II against Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai, treble damages and costs for RESPA violations;

c.    under Count III against Defendant GreenPoint, Defendant Capital One Services, Defendant Capitol Mortgage, Defendant Nafai, Defendant Rawls and Defendant Teeter for costs, treble damages and attorney's fees.

d.    under Count IV against Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and Defendant Nafai, actual damages, imposition of a constructive trust upon the proceeds of the transaction as were paid to Defendant Capitol Mortgage, Defendant Teeter, Defendant Rawls and/or Defendant Nafai, and an order requiring disgorgement of all proceeds paid to Defendant Rawls,

1      Defendant Capitol Mortgage, Defendant Teeter and/or Defendant Nafai and to

2      **punitive damages** for breach of fiduciary duty;

3

4      e.    under Count IV against Defendant Capitol Mortgage, Defendant Teeter, Defendant

5            Rawls and Defendant Nafai, actual damages for Deceit;

6

7      f.    such other relief to which Mr. Ouziz may be entitled, or as determined just and

8            appropriate by this Court.

9

10     **DEMAND FOR JURY TRIAL**

11

12     Dated: April 28th, 2008

13

14

15           By: _____

16                 Scott A. Flaxman

17                 Attorney for the Plaintiff, Marouane Ouziz

18

19

20

21

22

23

24

25

# EXHIBIT A

# Chicago Title Company

2410 Fair Oaks Blvd., Suite 110, Sacramento, CA 95825
916 481-0393 • FAX 916 482-6770

**DATE:** June 20, 2006
**ESCROW NO.:** 06-**60304208**-MA
**LOCATE NO.:** CACTI7707-7734-4603-0039107161
**ESCROW OFFICER:** Maggie Aviles

**TIME:** 5:47 PM

**CLOSING DATE:**

## BORROWER ESTIMATED CLOSING STATEMENT

| | |
|---|---|
| **LENDER:** | GreenPoint Mortgage Funding, Inc. |
| **BORROWER:** | Marouane Ouziz |
| **PROPERTY:** | 95 Cleopatra Dr, Pleasant Hill, CA 94523 |

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to GreenPoint Mortgage Funding, Inc. | | 544,000.00 |
| New 2nd Trust Deed to GreenPoint Mortgage Funding, Inc. | | 68,000.00 |
| **TITLE CHARGES:** | | |
| 06-ALTA Loan w/Form 1 - 1992 for $544,000.00 | 1,150.00 | |
| Endorsement Fee(s) | 75.00 | |
| Recording Deed | 12.00 | |
| Recording Trust Deed(s) | 120.00 | |
| Other Policy Limited Title Policy $68,000.00 | 125.00 | |
| **ESCROW CHARGES:** | | |
| Escrow Fee to Chicago Title | 550.00 | |
| Draw Deed | 50.00 | |
| Outside Courier/Special Messenger | 60.00 | |
| Additional Work Charge Email doc fee | 50.00 | |
| **NEW LOAN CHARGES - GreenPoint Mortgage Funding, Inc.** | | |
| Total Loan Charges: $2,297.55 | | |
| Appraisal Fee to Penstar | | |
| Lender pays YSP $12920.00 POC to Capitol Mortgage | 425.00 | |
| Doc Prep to GreenPoint Mortgage Funding, Inc. | | |
| Tax Service Fee to GreenPoint Mortgage Funding, Inc. | 390.00 | |
| Processing / Admin Fee to Capitol Mortgage | 79.00 | |
| Flood Cert to GreenPoint Mortgage Funding, Inc. | 565.00 | |
| Underwriting Fee to GreenPoint Mortgage Funding, Inc. | 11.00 | |
| Interest at $115.51 per day from 6/26/2006 to 7/1/2006 to | 250.00 | |
| GreenPoint Mortgage Funding, Inc. | 577.55 | |
| **NEW LOAN CHARGES - GreenPoint Mortgage Funding, Inc.** | | |
| Total Loan Charges: $150.00 | | |
| Lender Pays YSP $510.00 POC to Capitol Mortgage Corporation | | |
| unding Fee to GreenPoint Mortgage Funding, Inc. | 150.00 | |
| **PAYOFFS - GMAC Mortgage Corporation** | | |
| otal Payoff $476,615.41 | | |
| rincipal Balance to GMAC Mortgage Corporation | 472,000.00 | |
| nterest to 06/30/2006 | 6,131.75 | |
| onwarding/Demand Fee to GMAC Mortgage Corporation | 30.00 | |
| ate Charges to GMAC Mortgage Corporation | 137.66 | |
| npound Account to GMAC Mortgage Corporation | | 3,700.00 |
| ecording Fee to GMAC Mortgage Corporation | 16.00 | |
| **AYOFFS - Wells Fargo Home Equity** | | |
| otal Payoff $89,754.79 | | |
| rincipal Balance to Wells Fargo Home Equity | 88,500.00 | |
| iterest to 06/05/2006 | 547.35 | |
| iterest on Principal Balance at $23.94 per day from 6/5/2006 | 622.44 | |
| ru 6/30/2006 to Wells Fargo Home Equity | | |
| orwarding/Demand Fee to Wells Fargo Home Equity | 30.00 | |
| econveyance Fee to Wells Fargo Home Equity | 45.00 | |

estmtpm)(07-02)

EXHIBIT    Initials

# EXHIBIT B

## SETTLEMENT CHARGES

*No changes to fees are allowed without our written approval. Final settlement fees must comply with applicable federal laws, rules, and regulations; and any applicable state laws or local ordinances.

| FEES | BUYER PD | SELLER PD | BROKER PD | LENDER PD | POC |
|------|----------|-----------|-----------|-----------|-----|
| Yield Spread Premium | $0.00 | $0.00 | $0.00 | $12,920.00 | $0.00 |
| Apprsl/Final Inspct. to Broker* | $425.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Doc Prep Fee To GPM* | $390.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Tax Service Fee* | $79.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Process/Admin Fee to Broker* | $565.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Flood Certification Fee* | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Underwriting Fee to GPM* | $250.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Settlement/Closing Fee | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title/Escrow Doc Prep | $50.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Notary Fee | $100.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Insurance | $1,150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Endorsement | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Recording Fees | $72.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Courier Fee to Settlement Agent | $60.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Lender Paid Mortgage Taxes:    0.00
Total Fees Paid From Rebate:    N/A

| RESERVES: | | | | BUYER | SELLER |
|-----------|---|---|---|-------|--------|
| Hazard Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Mortgage Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Flood Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| City Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| County Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Annual Assessments | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 1 | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 2 | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Aggregate Adjustment | | | | 0.00 | 0.00 |
| ** Please be aware that impounds are an estimate. | | | | | |

### PREPAID INTEREST:

FROM: 06/24/2006    TO: 07/01/2006    = 7    days    @$ 115.51    / day = 808.57

WIRE/CHECK AMOUNT (available for wet-funds states only):    N/A

---

### LENDER CHARGES AND PREPARATION OF HUD-1

- Lender's (and other third-party) fees are indicated in the "Settlement Charges" section of these instructions. These charges are to be reflected precisely as labeled on the appropriate line of HUD-1. POC items must be reflected as such on HUD-1.

- For wet-funded loans only, preliminary HUD-1 to be reviewed and approved by closer/funder prior to closing.

- You have disclosed to us the loan settlement fees to be charged on this loan via the Loan Settlement Fee Agreement. No changes to these fees are allowed without our written approval. If additional fees are charged without our approval, you will be required to refund the additional fees to the borrower. In addition to refunding the unapproved fees, you will be required to pay for any and all damages incurred by the Lender, borrower and seller as a result of your failure to follow any of these closing instructions or the Loan Settlement Fee Agreement Instructions.

- We require a final HUD-1 or HUD-1A RESPA Settlement Statement on all transactions. We rely solely upon the escrow agent to complete and deliver the "Statement of Actual Costs" in accordance with the Real Estate Settlement Procedures Act. A condition of our loan is that the escrow agent and title company accept all conditions set forth on this document and on the other pages and addenda of these instructions. The "Statement of Actual Costs" must be complete and delivered in accordance with such requirements in order that we are not subject to any claim for, or any damage, liability or penalty.

- All HUD-1s must clearly distinguish those costs associated with any Lender-approved secondary financing from those required by this loan.

# EXHIBIT C

### SETTLEMENT CHARGES

*No changes to fees are allowed without our written approval. Final settlement fees must comply with applicable federal laws, rules, and regulations; and any applicable state law or local ordinances.

| FEES | BUYER PD | SELLER PD | BROKER PD | LENDER PD | POC |
|---|---|---|---|---|---|
| Yield Spread Premium | $0.00 | $0.00 | $0.00 | $510.00 | $0.00 |
| Funding Fee to GPM* | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Notary Fee | $50.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Insurance | $125.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Recording Fees | $42.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Lender Paid Mortgage Taxes:  0.00
Total Fees Paid From Rebate:  N/A

| RESERVES: | | | | BUYER | SELLER |
|---|---|---|---|---|---|
| Hazard Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Mortgage Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Flood Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| City Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| County Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Annual Assessments | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 1 | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 2 | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Aggregate Adjustment | | | | 0.00 | 0.00 |

** Please be aware that impounds are an estimate.

### PREPAID INTEREST:

FROM: 06/24/2006    TO: 07/15/2006    = N/A  days  @$ N/A  / day = N/A

WIRE/CHECK AMOUNT (available for wet-funds states only):    N/A

---

### LENDER CHARGES AND PREPARATION OF HUD-1

- Lender's (and other third-party) fees are indicated in the "Settlement Charges" section of these instructions. These charges are to be reflected precisely as labeled on the appropriate line of HUD-1. POC items must be reflected as such on HUD-1.

- For wet-funded loans only, preliminary HUD-1 to be reviewed and approved by closer/funder prior to closing.

- You have disclosed to us the loan settlement fees to be charged on this loan via the Loan Settlement Fee Agreement. No changes to these fees are allowed without our written approval. If additional fees are charged without our approval, you will be required to refund the additional fees to the borrower. In addition to refunding the unapproved fees, you will be required to pay for any and all damages incurred by the Lender, borrower and seller as a result of your failure to follow any of these closing instructions or the Loan Settlement Fee Agreement Instructions.

- We require a final HUD 1 or HUD 1A RESPA Settlement Statement on all transactions. We rely solely upon the escrow agent to complete and deliver the "Statement of Actual Costs" in accordance with the Real Estate Settlement Procedures Act. A condition of our loan is that the escrow agent and title company accept all conditions set forth on this document and on the other pages and addenda of these instructions. The "Statement of Actual Costs" must be complete and delivered in accordance with such requirements in order that we are not subject to any claim for, or any damage, liability or penalty.

- All HUD-1s must clearly distinguish those costs associated with any Lender-approved secondary financing from those required by this loan.

.

# EXHIBIT D

# PREPAYMENT FEE ALLONGE

Loan Number: 0090025164

This Prepayment Fee Allonge ("Allonge") is made this **twentieth** day of **June, 2006**, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

If I make a Prepayment within **three years** of the date of this Note, I will pay a Prepayment fee on the aggregate Prepayments made within any consecutive twelve month period which exceed 20% o f the original Principal amount stated in the Note. The Prepayment fee I will pay shall be an amount equal to six (6) months advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original Principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the **3rd Year** anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Borrower)     _____ (Borrower)
Marouane Ouziz

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

*[Sign Original Only]*

EXHIBIT B