RONALD M. ARLAS, ESQ. #59091
ARLAS & SMITHTON
100 Wood Hollow Drive
Novato, CA 94945
(415) 878-5390
Fax (415) 878-3595
ron.arlas@greenpoint.com

EDWARD R. BUELL, ESQ. #240494
GREENPOINT MORTGAGE FUNDING, INC.
100 Wood Hollow Drive
Novato, Ca. 94945
(415) 878-5616
Fax (4150 878-3593
ted.buell@greenpoint.com

Attorneys for Defendants and Counterclaimant
GREENPOINT MORTGAGE FUNDING, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAROUANE OUZIZ,<br><br>            Plaintiff,<br><br>                  vs.<br><br>CORPORATION SERVICE COMPANY,<br>et al.,<br><br>            Defendants.<br><br>――――――――――――――――<br><br>GREENPOINT MORTGAGE FUNDING,<br>INC.,<br><br>            Counterclaimant<br><br>         vs.<br><br>MAROUANE OUZIZ, an individual; and<br>DOES 1 through 20, inclusive,<br><br>            Counter-Defendants | Case No. 3:08-CV-02201-WHA<br><br>[Assigned for All Purposes to the<br>Honorable Judge William H. Alsup]<br><br>COUNTERCLAIM OF DEFENDANT<br>GREENPOINT MORTGAGE<br>FUNDING, INC. FOR FRAUD AND<br>EQUITABLE SUBROGATION |

COMES NOW counterclaimant GreenPoint Mortgage Funding, Inc. ("GPM"), and alleges as

follows:

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION                                                          3:08-CV-02201-WHA

1.     The claims alleged in the underlying Complaint that was filed by Plaintiff on April 29, 2008 were brought pursuant to federal law, to wit, the Real Estate Settlement Procedures Act ("RESPA") codified at 12 U.S.C. §2601 et seq. and the Civil Racketeer Influenced and Corrupt Organizations Act ("Civil RICO") codified at 18 U.S.C. §1961 et seq. The Court therefore has supplemental Jurisdiction over the state law claims raised in this counterclaim pursuant to 28 U.S.C. §1367.

### **GENERAL ALLEGATIONS**

2.     Counterclaimant GPM, is a New York corporation, which maintains its principal place of business in Marin County, California. GPM is licensed by the California Secretary of State to conduct business in California. GPM was at all times herein relevant a wholesale mortgage banker, which funded and acquired residential mortgage loans, facilitated through independent mortgage brokers, secured by one to four residential dwelling units. Such loans are then resold to secondary mortgage market investors. GPM stopped originating new loans in August 2007.

3.     GPM is informed and believes, and on that basis alleges that at all times herein relevant, counter-defendant Marouane Ouziz ("OUZIZ") is and was a resident of California residing at 95 Cleopatra Drive, Pleasant Hill, California (the "PROPERTY").

4.     GPM is informed and believes, and on that basis alleges that at all times herein each counter-defendant was a duly authorized agent and employee of the remaining counter-defendants and were at all times acting within the course and scope of such agency and employment with the permission, knowledge, consent and ratification of each of the remaining counter-defendants.

5.     The true names and capacities, whether individual, corporate, associate or otherwise of counter-defendants Does 1-20, inclusive, are unknown to GPM, and, therefore, GPM sues said counter-defendants by such fictitious names, and GPM will amend this counterclaim to show their true names and/or capacities when the same have been ascertained. GPM is further informed and

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION

3:08-CV-02201-WHA

believes, and on that basis alleges, that each of the fictitiously named counter-defendants are in some manner responsible for the events and happenings herein referred to and proximately caused the damage suffered by GPM. For ease of reference, whenever a named counter-defendant is referred to herein, such reference shall be deemed to include Does 1-20.

6.    On or about July 1, 1999, GPM's predecessor in interest, Headlands Mortgage Company ("HMC"), and Capitol Mortgage Corp ("CMC" or "Broker") entered into a contract entitled HEADLANDS MORTGAGE COMPANY BROKER AGREEMENT ("AGREEMENT"), wherein HMC agreed to fund approved residential mortgage loans submitted by CMC on behalf of consumer borrowers. GPM succeeded to the ownership of all HMC broker agreements. CMC is the "BROKER" within the meaning of the AGREEMENT. A true and correct copy of said AGREEMENT is attached hereto and incorporated herein as Exhibit 1. CMC is and at all times relevant hereto was an independent business entity and as stated in Section 1 of the AGREEMENT, was not an agent of GPM or HMC.

7.    As stated in paragraph 17(e) of the Complaint, Defendant Kevin Nafai ("Defendant Nafai") is "an individual, upon information and belief, was, at all times relevant to this matter, either an employee of or an independent contractor working for Defendant Capitol Mortgage."

8.    As stated by OUZIZ in paragraph 22 of the Complaint, OUZIZ discussed the possibility of refinancing the PROPERTY with Defendant Nafai.

9.    In June 2006, OUZIZ refinanced the PROPERTY by submitting two loan applications (the "LOAN APPLICATIONS") to GPM, through his broker of record CMC, for funding (the "OUZIZ LOANS"): (1) A first lien priority loan in the amount of $544,000 that was secured by a Deed of Trust ("DOT") on the PROPERTY, and (2) A second lien priority loan in the amount of $68,000 that was secured by a DOT on the PROPERTY.

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION

3:08-CV-02201-WHA

10. As stated by OUZIZ in paragraph 24, his only information and communication prior to the closing of the OUZIZ LOANS came from information supplied by Defendant Nafai who was an agent/employee of the Broker. In other words, prior to the date of funding, GPM had no contact with OUZIZ and dealt only with CMC, the Broker of Record for the OUZIZ LOANS.

11. GPM funded the OUZIZ LOANS based on the information contained in the LOAN APPLICATIONS on June 28, 2006 that were submitted on behalf of OUZIZ by his Broker. True and correct copies of the LOAN APPLICATIONS are attached hereto as Exhibits 2 and 3 respectively and incorporated herein by reference.

12. The OUZIZ LOANS were subsequently sold to an investor on the secondary market and the servicing of the OUZIZ LOANS was transferred by GPM in September and October[1] of 2006. Therefore, after October of 2006 GPM no longer had any interest in either the PROPERTY or the OUZIZ LOANS.

### FIRST CAUSE OF ACTION
**Fraud - Intentional Misrepresentation**

13. GPM realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 10, above.

14. On June 21, 2006, OUZIZ signed the LOAN APPLICATIONS that were submitted by CMC on behalf of OUZIZ to GPM.

15. The LOAN APPLICATIONS state that OUZIZ was employed as a Sales Director for Swipe USA and that he had worked there for 6 years and within this line of work for 6 years. GPM is informed and believes and on that basis alleges that Swipe USA is a company that places, leases and sells ATM (Automated Teller Machines) machines to retail businesses.

---

[1] Servicing of the second priority loan was transferred to a new servicer in September, and servicing of the first priority loan was transferred to a new servicer in October.

-4-

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION

3:08-CV-02201-WHA

16.    On both of the LOAN APPLICATIONS submitted to GPM, OUZIZ stated that he earned a monthly gross income of $16,750. This equates to an annual gross salary of $201,000. GPM is now informed and believes and on that basis alleges that the gross monthly income stated by OUZIZ in both of the LOAN APPLICATIONS far exceeds the gross monthly salary of a salesman with only 6 years of experience in this industry. GPM is now informed and believes that OUZIZ did not earn the amount of income stated in the LOAN APPLICATIONS and therefore that the statements contained in the LOAN APPLICATIONS regarding his income were false and fraudulent.

17.    By signing the LOAN APPLICATIONS, OUZIZ acknowledged in Section IX of said LOAN APPLICATIONS that they specifically represent to the Lender, GPM, that:

> "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in **civil liability, including monetary damages**, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties . . ." (emphasis added).

18.    GPM relied on the information that was contained in the LOAN APPLICATIONS in determining whether or not to fund the OUZIZ LOANS. GPM made its determination to fund the OUZIZ LOANS based on the information contained in the LOAN APPLICATIONS and would not have funded the OUZIZ LOANS if it had knowledge that the statements contained therein were false and fraudulent.

19.    Therefore, GPM is informed and believes and on that basis alleges that OUZIZ misrepresented his gross monthly income in order to obtain the OUZIZ LOANS. GPM is further informed and believes and on that basis alleges that OUZIZ knew or should have known that the statements he made in the LOAN APPLICATIONS were false and fraudulent at the time he signed the LOAN APPLICATIONS and at the time the loan application was submitted to GPM.

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION

3:08-CV-02201-WHA

20.    GPM is informed and believes and on that basis alleges that OUZIZ made the false representations with knowledge that GPM would rely on the representations of his monthly income and with the intent of inducing GPM to fund the OUZIZ LOANS.

21.    As a result of the fraudulent and false representation of OUZIZ GPM has been damaged in an unknown amount, probably in the minimum amount of the $612,000.00. GPM may incur additional expenses in an amount unknown to GPM at this time. GPM prays leave of this Court to amend this counterclaim to insert the true amount of the damages when they are ascertained.

22.    GPM is informed and believes and on that basis alleges that in doing the acts herein alleged OUZIZ acted with fraud, oppression and malice and GPM is entitled to punitive damages.

## SECOND CAUSE OF ACTION
### Equitable Subrogation
### (Against OUZIZ)

23.    GPM realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 10, above.

24.    Pursuant to paragraphs 31 and 32 of the COMPLAINT, as well as the OUZIZ LOANS, funds were to be used to pay-off pre-existing debt that had been incurred by OUZIZ. The approximate amount of the pre-existing debt was $565,969.17. The disbursal schedule is laid out in the U.S. Department of Housing and Urban Development Settlement Statement ("HUD-1")[2], which shows that $476,765.00 was paid to WGMAC Mortgage Corporation, and that $89,204.17 was paid to Wells Fargo Home Equity. A true and correct copy of the HUD-1 for each of the OUZIZ LOANS have been attached hereto as Exhibits 4 and 5 respectively. Furthermore, pursuant to the OUZIZ

---

[2] Because there were 2 OUZIZ LOANS there are two separate HUD-1s. However, because the loans were part of a Piggy-back refinance transaction, both loans were closed and funded at the same time. As a result, the HUD-1 for each of the OUZIZ LOANS contain the same data regarding the transaction. For ease of reference a copy of each HUD-1 is attached, however the two HUD-1s will be collectively referred to as the "HUD-1" (singular).

-6-

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION

3:08-CV-02201-WHA

LOANS, and as indicated on line 303 of the HUD-1, OUZIZ received $38,685.56 in cash proceeds from the funding of the OUZIZ LOANS.

25.    In June of 2006 OUZIZ entered into two contracts with GPM in the form of the NOTES and DOTS on the OUZIZ LOANS. Pursuant to the terms of the NOTES, GPM funded the OUZIZ LOANS in the total amount of $612,000.00 to be secured by the DOTS on the PROPERTY.

26.    It would be inequitable that GPM should bear the full loss of $612,000.00 while $604,654.73 of the OUZIZ LOANS was received by OUZIZ for his benefit either as cash or to pay-off pre-existing real estate debt incurred by OUZIZ. As such, OUZIZ has been unjustly enriched by the amount of the OUZIZ LOANS that was used solely for his benefit. Therefore, by reason of the payment of the amount of $604,654.73 by GPM for the sole benefit of OUZIZ, GPM and its successors-in-interest became entitled to enforce the right to reimbursement for pay-off of the pre-existing debt of OUZIZ and the cash proceeds received by OUZIZ from the proceeds of the OUZIZ LOANS. GPM is entitled to interest at the legal rate on the pay-off amount of $604,654.73 or according to proof from June 28, 2006.

WHEREFORE, GPM prays for judgment against OUZIZ as follows:

## AS TO THE  FIRST CAUSE OF ACTION

1.    For damages against OUZIZ in an amount of no less than $612,000.00, or according to proof;

2.    For punitive damages against OUZIZ;

## AS TO THE SECOND CAUSE OF ACTION

3.    For an award of $604,654.73 or according to proof plus interest at the legal rate from June 28, 2006; as a set-off against any judgment entered against GPM;

///

///

-7-

## AS TO ALL CAUSES OF ACTION

4.  For costs of the suit herein incurred; and

5.  For such other and further relief the court may deem proper.


Dated: June 23, 2008                                    _____/s/_____
                                                        RONALD M. ARLAS, ESQ.
                                                        Attorney for Defendant and Counterclaimant
                                                        GREENPOINT MORTGAGE FUNDING, INC.


\Legal\PLEADING\Ouziz v Capital One\Counterclaim of GPM 6.08.doc

COUNTERCLAIM OF DEFENDANT GREENPOINT
MORTGAGE FUNDING, INC. FOR FRAUD AND
EQUITABLE SUBROGATION                                    3:08-CV-02201-WHA

# EXHIBIT 1

**HEADLANDS MORTGAGE COMPANY**
**BROKER AGREEMENT**

This Broker Agreement (the "Agreement"), is entered into by and between _Gregory D. Teeter_ a _S Corp._ Corporation doing business as _Capitol Mortgage_ ("Broker"), and HEADLANDS MORTGAGE COMPANY, a California Corporation ("Lender").

## RECITALS

A. The Parties hereto wish to establish a non-exclusive relationship whereby Broker will submit applications for loans to be secured by first or second priority liens against 1-4 single family residential properties (the "Loans") to Lender on behalf of Broker's clients ("Borrowers") for possible funding by Lender.

B. The Parties desire to enter into this Broker Agreement to set forth the terms of their relationship.

NOW THEREFORE, the Parties do hereby agree as follows:

## AGREEMENT

1. **NON-EXCLUSIVE AGREEMENT:** Nothing contained herein shall obligate Broker to submit all loan funding requests that it brokers to Lender, it being understood that this shall be a *non-exclusive agreement*. Nothing contained herein shall obligate Lender to fund Loans submitted by Broker without Lender's prior review and approval at Lender's sole discretion. Lender's obtaining of a Loan Package (as defined below) from Broker does not:
   a. prohibit Lender from considering loan application packages from other sources,
   b. obligate Lender to accept or consider other or future packages from Broker, or
   c. establish an agency relationship with Broker.

2. **GENERAL BROKER RESPONSIBILITY:** With regard to Loans submitted by Broker to Lender, Broker shall describe and represent to a Borrower Lender's policies, procedures and pricing only as set forth by Lender. Broker shall not advertise or in any manner represent that it is employed by, an agent of, representative of, or is in any way related to Lender. Broker shall be responsible at its own expense for the accurate preparation and execution of a complete property and credit Loan Application Package ("Loan Package") on each Loan request *submitted, under such programs, procedures and fee schedules as Lender periodically may establish*, including but not limited to those items listed below or as may be required by Lender in conformance with Lender's policies and procedures as established and as may be modified from time to time:
   a. Loan application
   b. Supporting credit information
   c. Supporting verification of credit, employment, deposits and mortgage payment history
   d. Copies of all government required disclosures
   e. Original appraisal of the property to be financed plus all supporting information necessary to substantiate Borrower's qualification for the Loan
   f. Such other credit, financial and other information as Lender may require.

Broker shall be solely responsible for any statements, explanations, or claims made to Borrower about the terms of the Loan, the approval process, or the status of the Borrower's loan approval. The contents of all Loan Packages submitted to Lender immediately shall become the property of Lender and Broker hereby assigns all rights, title and interest in the file (except for Broker's right to receive an origination fee) to Lender. All information contained in a Loan Package may be subject to Lender's independent verification. Broker understands that, in consideration of Lender funding Loans offered by Broker, Lender relies on Broker's full cooperation, before and after the funding of any Loan. Broker agrees to fully assist Lender in obtaining any information and documentation Lender deems necessary and to otherwise cooperate fully with Lender to fulfill the purposes of this Agreement.

3. **LOAN APPROVAL:** Loan approval shall be within Lender's sole discretion. Broker shall not commit Lender to do anything or take action without the prior written approval of Lender. Without limiting the generality of the foregoing, Broker shall not represent that Lender has approved or will approve any loan until Broker is so informed by Lender in writing. All loan approvals are conditional unless and until Borrower actually executes escrow instructions presented to Borrower in order to close escrow. It is also fully understood and agreed that Lender's approval of the loan application is based upon submission by Broker of true and accurate information in the Loan Package and all supporting documentation, including but not limited to the handwritten and typed Form 1003 and any and all appraisals. The fact that final approval of the loan application is solely within the discretion of the Lender shall not be used as a defense to a claim that Broker has breached any part of this Agreement or that Broker has submitted false or inaccurate information in the Loan Package and supporting documentation, including but not limited to the Form 1003, and any and all appraisals.

4. **UNDERWRITING OF LOANS:** Lender shall have the right, but not the obligation, to underwrite any Loan submitted for funding pursuant to this Agreement. However, the exercise of this right by Lender shall not affect in any way Broker's obligations hereunder, including, without limitation, Broker's repurchase obligations under Section 15 hereof and Broker's indemnification obligations under Section 13, hereof. Broker understands that Lender routinely conducts quality control audits to re-verify income/deposit information, credit documentation, and appraisals submitted by Broker. Broker understands employment is verbally verified on all loan programs offered by Lender. Broker understands that any discrepancies found by Lender during quality control and verbal audits are grounds for immediate cancellation of this Agreement, possible notification to applicable state and governmental agencies, and a breach of Section 11 below.

5. **CLOSING OF LOANS:** All Loans shall close in Lender's name or in names of an affiliate of Lender.

6. **NOTIFICATION OF ACTION:** Lender shall notify Broker by telephone or facsimile transmission of the conditional approval or rejection of each completed Loan Package. For each Loan conditionally accepted by Lender, Lender shall fund the Loan provided that all conditions precedent are satisfied and all documentation as required by Lender are timely executed, acknowledged and returned to Lender.

7. **AMOUNTS DUE TO BROKER:**
   a. Subject to Sections 7b, 7c and 7d below, nothing shall be owed to Broker by Lender on account of any proposed Loan which is not closed and funded by Lender. Upon closing of any Loan with respect to which Broker has submitted a Loan Package to Lender, Lender shall remit to Broker an amount equal to the difference between the points charged to the Borrowers and the wholesale points which the Lender indicates it will keep as stated in the Loan Program Statement provided to Broker, except in the case of zero point loans (i.e., with respect to which the Borrower pays no points) in which case Lender shall remit to Broker the points specified in the Loan Program Statement provided to Broker; provided, however, that in any case, Lender shall deduct from amounts to be remitted to Broker those fees and charges due to Lender in connection with the Loan transaction. Lender shall also remit to Broker such other consideration as may be agreed from time to time between Broker and Lender pursuant to a separate agreement.
   b. In the event Lender receives conflicting instructions from Broker and the Broker's broker of record as to who should receive any monies due Broker under this Agreement, Lender shall escrow such monies in an interest bearing trust account. Lender shall release such monies and all interest accrued thereon upon the execution and delivery of joint instructions from Broker and the Broker's broker of record.
   c. In the event that a Loan pays off due to Broker's origination efforts within 120 days after funding and Lender has paid Broker a premium, Broker shall then remit to Lender all of the premium paid within 10 calendar days after Lender has sent written notice to Broker. If Lender funds the refinance loan within 120 days of funding, no premium will be paid to Broker. If Broker fails to remit said payment to Lender within said 10 calendar days, then the Lender may reimburse itself for any payments due to Broker out of loan fees from subsequent closings.
   d. In the event that Lender, at its option and sole discretion, determine that Broker has breached any term of this Agreement, Lender may withhold payment of funds due to Broker for any Loan that Lender is funding or is about to fund and for which the amounts due to Broker under this Section 7 have not yet been paid. Such funds will be placed in a separate Trust Account until such time as Lender and Broker have settled Lender's claim that Broker has breached this Agreement.

**8.FAILURE TO SUPPLY A COMPLETE LOAN PACKAGE:** In the event that Broker or Borrowers fail to supply to Lender any documentation requested or desired by Lender with respect to any Loan, Lender shall have the option, at its sole and absolute discretion, to:

    a. commit to make the Loan on the basis of the documentation provided;

    b. commit to make the Loan subject to delivery by Borrower or Broker to Lender of such documentation as Lender specifies in writing at the time such commitment is made; or

    c. reject the Loan.

**9.USE OF APPROVED VENDORS:** Broker shall not utilize any real estate appraiser, credit reporting agency or other vendor in connection with the preparation or submission of any Loan Package that is not acceptable to Lender. In the event that Broker shall submit a Loan Package including information or reports from a person or entity not acceptable to Lender, Lender may reject or accept the Loan Package in accordance with Section 8 above.

**10.AUTHORIZATION TO OBTAIN BUSINESS CREDIT REPORT:** Broker authorizes Lender to obtain a business and individual credit report with respect to Broker upon mutual execution of this Agreement and from time to time thereafter as deemed necessary or appropriate by Lender. Broker acknowledges and agrees that in the course of its business, Lender conducts quality control audits of Loan Packages. Lender shall have the right to review the files of Broker related to Loan Packages submitted to Lender during Broker's normal business hours.

**11.BROKER'S WARRANTIES:** Broker represents and warrants to Lender, as of (i) the time any Loan Package is submitted to Lender, and (ii) as of the time the Loan is funded and closed, that:

    a. No Untrue Statements: Broker shall not submit in any Loan Package any false, fraudulent, inaccurate or erroneous information or statements, or omit any material facts necessary to make any statement or information included in the Loan Package true, accurate and understandable. For purposes of this warranty, the term "submit" shall mean (i) submitting a Loan Package to Lender with false, fraudulent, inaccurate or erroneous information regardless of Broker's actual or prior knowledge of such false, fraudulent, inaccurate or erroneous information; or (ii) submitting a Loan Package to Lender with false, fraudulent, inaccurate or erroneous information after failing to follow standard practices and procedures prevalent in the mortgage banking industry; or (iii) submitting a Loan Package to Lender containing an appraisal that contains false, fraudulent, inaccurate or erroneous information where such information was or should have been within the knowledge or control of appraiser; or (iv) submitting a Loan Package to Lender where the Broker has a' non arms-length business, financial or personal affiliation with, or financial interest in, the appraiser.

    b. Absence of Claims: Except as previously disclosed by Broker to Lender in writing, there is not pending or, to the best of Broker's knowledge, threatened any suit, action, arbitration, or legal, administrative, or other proceeding or governmental investigation (including an allegation of fraud by another Lender) against Broker or its current or former owners, agents, or employees which could have a material adverse effect on the Broker's business, assets, financial condition, operations or reputation.

    c. Control of Documents: Except where Borrower has been asked to submit any loan documents directly to Broker, no Borrower shall have had in his direct or indirect possession or control any completed credit, income, employment or deposit verification document submitted to Lender with respect to any Loan.

    d. Duly Licensed: Broker possesses all necessary licenses, permits, and authority to engage in the activities contemplated by this Agreement. If applicable, Broker's license number and its expiration date appear below.

    e. Ownership: Except as otherwise disclosed to Lender in writing before the submission of any Loan Package, Broker shall have no direct or indirect ownership interest or financial interest in any property serving as security for the Loan, in any title company, escrow company or notary providing settlement services on a Loan, nor shall Broker have any financial interest, whether evidenced by ownership or debt, in any property serving as security for the Loan at any time prior to funding of the Loan by Lender except with prior written approval by Lender, or in the Seller of the property in the case of loans sought by Borrowers who are buying the property.

    f. Compliance with Laws: With respect to each Loan submitted by Broker and funded by Lender, Broker has complied with all laws and regulations applicable to it as a mortgage broker, and as a Loan correspondent under HUD regulations, including but not limited to the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth In Lending Act, and all other applicable local, state and Federal laws and regulations.

    g. Authority: This Agreement and all actions provided for herein have been duly authorized by Broker's Board of Directors, if Broker is a corporation, or by such individual or individuals empowered and authorized to enter into agreements on behalf of Broker. Broker shall provide Lender with evidence reasonably satisfactory to Lender of such authorization. The performance of Broker's duties under this Agreement will not violate the provisions of Broker's organizational documents, any agreement to which it may be a party or any court order, judgment or decree to which it may be subject.

    h. Valid Documents: All documents submitted to Lender are in every respect valid and genuine, being what on their face they purport to be and all information (credit or otherwise) submitted in connection with each such a Loan Package is true and accurate.

    i. Sale of Loans: Broker has no knowledge of any circumstances or conditions with respect to any Loan, mortgaged property, mortgage or mortgagor's credit standing that can be reasonably expected to cause any governmental, quasi-governmental or private institutional investors to regard any Loan as an unacceptable investment, cause any Loan to become delinquent, or adversely affect the value of the security or marketability of the Loan.

**12.STATUS OF BROKER:** Nothing in this Agreement shall be construed as making the Broker a joint venture, partner, representative, employee or agent of Lender. Broker shall not hold itself out as such, nor shall it use the Lender's name in any advertising without Lender's expressed prior written consent. Broker is an independent contractor, and Broker shall determine the method, details, and means of performing all services described in this Agreement.

**13.BROKER'S INDEMNIFICATION:** Broker shall indemnify, defend, and hold Lender and its shareholders, directors, officers, agents, employees, successors, and assigns harmless from and against, and shall reimburse the same with respect to any and all loss, damage, liability, costs, and expenses, including, reasonable attorneys' fees, from any cause whatsoever, including but not limited:

    a. any breach of any representation or warranty contained in Section 11 above;

    b. Broker's failure to perform any obligation set forth in this Agreement; or

    c. any claim by a Borrower resulting from Lender's failure or refusal to fund a Loan (collectively, a "Loss").

Without limiting the generality of the foregoing, Lender's right to indemnification from Broker shall extend to all repurchase or indemnification demands by any third party to which Lender has sold any Loan originally submitted to Lender by Broker. Broker's obligation to indemnify Lender under this Agreement shall arise upon (i) Lender's notification to Broker that a Loss has occurred or (ii) automatically upon Lender's receipt of a Loan repurchase demand from a secondary market investor which Lender determines in its sole and absolute discretion to be enforceable, even if Lender has not incurred any Loss with respect to such Loan.

**14.LENDER'S RIGHTS:** Broker's obligation to fully indemnify Lender under this Agreement shall not be affected by Lender's taking any of the following actions with or without notice to Broker:

    a. Liquidation, repayment, retirement, or sale or resale of any Loan;

    b. Foreclosure of any Loan, including without limitation Lender's acquisition of the property securing a Loan by making a full credit bid at such foreclosure sale; or

    c. Sale or resale of the property securing any Loan.

**15.REPURCHASE AGREEMENT:** In the event of a breach of any warranty or representation contained in Section 11 by Broker, or in the event of a repurchase or indemnification demand from a secondary market investor which Lender determines in its sole and absolute discretion to be enforceable, even if Lender has not incurred any Loss with respect to such Loan, and the Loan in question is closed and funded by Lender, Broker agrees to either: (i) repurchase such a Loan immediately upon written demand therefor, for the repurchase amount set forth in Section 16 hereof, (ii) refinance the Loan at par plus accrued interest and pay any loss costs or damages incurred by Lender, or (iii) indemnifying Lender pursuant to Section 13. Broker agrees that any breach of this Section 15 may not be adequately compensable in damages alone. Therefore, Broker agrees that, in the event of any breach of Section 15, Lender shall, without limitation, be entitled to seek and obtain equitable relief by way of specific performance or otherwise to enforce Broker's repurchase or indemnification obligation hereunder.

**16.REPURCHASE AMOUNT:** A repurchase pursuant to Section 15 hereof shall be priced as follows:

    a. The original principal amount of the Loan, less principal reductions received by Lender; plus

    b. All interest accrued but unpaid on the principal balance of the Loan from the date of funding by Lender through and including the first day of the month following the month the repurchase is made; plus

c. All costs and expenses incurred by Lender in connection with origination, processing and funding of the Loan; plus

d. All costs and expenses incurred by Lender in enforcing Broker's obligation to repurchase such a Loan, including, without limitation, reasonable attorneys' fees and costs of suit.

**17. TERMINATION OF AGREEMENT:** Either party may terminate this Agreement at any time, upon written notice to the other party; provided, however, that any termination of this Agreement shall not affect

a. Lender's obligation to pay any amounts due Broker under this Agreement, or

b. The obligations of Broker with respect to Loans already funded by Lender pursuant to this Agreement, including, without limitation, the obligation of Broker to indemnify and hold Lender harmless from and against any Loss pursuant to Section 13 hereof, and to repurchase or indemnify a Loan from Lender pursuant to Section 15 hereof.

**18. NOTICE OF CERTAIN MATTERS:** Broker hereby covenants and agrees with Lender that Broker shall promptly give written notice to Lender of

a. The occurrence of any breach of a representation or warranty as set forth in Section 11 hereof;

b. Any litigation or proceeding affecting Broker involving amounts in the case of any such individual litigation, investigation or proceeding in excess of One Thousand Dollars ($ 1,000.), or which, regardless of the amount in controversy, if adversely determined, could have a material adverse effect on the business, operations, property or financial or other condition of Broker or the liability of Broker to perform its obligations hereunder;

c. Receipt by Broker of notice from any agency concerning revocation, suspension or any other adverse action or potential action relating to any of Broker's licenses to conduct its business; and

d. A material adverse change in the business, operations, property or financial or other condition of Broker.

e. Any change in (i) the ownership structure of Broker; (ii) the Broker's broker of record for licensing purposes; or (iii) Broker's name, address or employer tax identification number.

**19. MISCELLANEOUS:**

a. Governing Law: This Agreement is entered into at the City of Larkspur, California and shall be governed by the laws of the State of California;

b. Notices: All notices required hereunder shall be in writing and shall be deemed to have been given, made and received only (i) upon delivery, if personally delivered to a party; (ii) One (1) business day after the date of dispatch, if by facsimile transmission; (iii) One (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed overnight delivery; or (iv) Three (3) business days after deposit in the United States first class mail, certified mail, postage prepaid, return receipt requested, at the addresses appearing below.

c. Attorneys' Fees: If any legal action or other proceeding is brought for the enforcement of any provision of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of the Agreement, the prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled. In addition, any such suit or proceeding shall be brought only in the state courts located in Marin County, State of California, which courts shall have sole and exclusive in personam, subject matter and other jurisdiction in connection with such suit or proceedings, and venue shall be appropriate for all purposes in such courts.

d. No Assignment: Broker may not assign this Agreement.

e. Entire Agreement, Amendment: This Agreement constitutes the entire Agreement between the parties and supersedes all prior and contemporaneous Agreements, representations and understandings. No supplement, modification, or amendment shall be binding unless executed in writing by and unilaterally agreed by both parties hereto. This Agreement applies to all present and future Loans, as well as those Loans previously submitted to or closed by Lender.

f. Waivers and Remedies: Failure or delay to audit any Loan or to exercise any right shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver. All remedies shall be cumulative and non-exclusive.

g. Partial Invalidity: If any provision of this Agreement is held to be invalid void, or unenforceable, the remaining provisions shall nevertheless continue in full force and effect.

h. Arbitration: Solely at Lender's discretion, Lender may require that all disputes, controversies, or differences between the parties, arising out of or related to this Agreement shall be resolved through binding arbitration. If Lender elects not to use arbitration, or if a court of competent jurisdiction rules that Lender's option under this part of the Agreement is invalid, the parties hereto agree that the provisions of Section 19c shall control as to the jurisdiction and venue of any legal action concerning this Agreement. If Lender requires an arbitration to resolve any disputes, controversy or differences between the parties arising out of or related to this agreement, the arbitration shall occur in San Francisco, California. Arbitration shall be conducted by a single arbitrator in accordance with the then-current commercial arbitration rules and supplementary procedures for commercial arbitration of the American Arbitration Association ("AAA"). Any discovery shall be conducted in accordance with laws of the State of California. The arbitrator shall be selected by the mutual agreement of the parties, or failing such agreement, shall be selected according to AAA rules. Judgment upon any arbitrator's award may be entered in any court of competent jurisdiction. The parties hereby consent to such court's jurisdiction.

i. Insurance: Upon the request of Lender, Broker shall, at its sole cost and expense obtain such miscellaneous professional liability or errors and omissions insurance in such amounts and with such companies as Lender may request. Said insurance shall name Lender as an additional insured and shall provide Lender with thirty (30) days prior written notice of cancellation or termination.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of this ___ day of _July_, 199_.

**BROKER:**
NAME: ___Capitol Mortgage Corp., INC.___
dba: _____
Address: ___805 Douglas Blvd. # 132___
___Roseville, CA 95678___

Telephone: ___916-789-1688___
License Number: _____
Expiration Date: _____

By: _____
(Signature of Owner)
___Gregory D. Teeter___
(Print Name)
___President___
(Title)

By: _____
Authorized Broker of Record
___Gregory D. Teeter___
(Print Name)

**LENDER:**
**HEADLANDS MORTGAGE COMPANY**
1100 Larkspur Landing Circle #101
Larkspur, CA 94939

Telephone:    800-462-2700

By: _____
(Signature)

_____
(Print Name)
___VP. QA___
(Title)

# EXHIBIT 2

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower

Co-Borrower

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | [x] Conventional | Other (explain): ALT A | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | FHA | USDA/Rural Housing Service | | | 0090025164 |

| Amount | Interest Rate | No. of Months | Amortization Type: | Fixed Rate | Other (explain): |
|---|---|---|---|---|---|
| $ 544,000.00 | 1.000 % | 480 | | GPM | [x] ARM (type): ALT A AF PIG 1MO/1YR |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 95 Cleopatra Drive, Pleasant Hill, CA 94523 | 1 |

| Legal Description of Subject Property (attach description if necessary)  As more particularly described in exhibit "A" attached hereto and made a part hereof. | Year Built |
|---|---|
| | 1951 |

| Purpose of Loan | Purchase | Construction | Other (explain): | Property will be: |
|---|---|---|---|---|
| | [x] Refinance | Construction-Permanent | | [x] Primary Residence  Secondary Residence  Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | |
|---|---|---|---|---|---|
| 2005 | $ 590,000.00 | $ 560,000.00 | Cash-Out/Debt Consolid | made [ ] to be made | Cost: $0.00 |

| Title will be held in what Name(s)  Marouane  Ouziz | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | Individual | [x] Fee Simple  Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## BORROWER INFORMATION / CO-BORROWER

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Marouane  Ouziz | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (925) 825-6895 | 04/05/1980 | 14 | | | | |

| [x] Married (include registered domestic partners)  Separated  Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 1  ages 5 | Married (include registered domestic partners)  Separated  Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [x] Own  Rent 1  No. Yrs. | Present Address (street, city, state, ZIP)  Own  Rent  No. Yrs. |
|---|---|
| 95 Cleopatra Drive  Pleasant Hill, CA 94523 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| 95 Cleopatra Drive  Pleasant Hill, CA 94523 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  Own [x] Rent 3  No. Yrs. | Former Address (street, city, state, ZIP)  Own  Rent  No. Yrs. |
|---|---|
| 1062 Capitol Ave  San Francisco, CA 94112 | |

## EMPLOYMENT INFORMATION — Borrower / Co-Borrower

| Name & Address of Employer  [ ] Self Employed | Yrs. on this job | Name & Address of Employer  [ ] Self Employed | Yrs. on this job |
|---|---|---|---|
| Swipe USA  217 Church St  San Francisco, CA 94114 | 6  Yrs. employed in this line of work/profession  6 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Sales Director | (415) 748-2254 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

0090025164
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP®-21N(CA) (0512).01
Page 1 of 4        VMP Mortgage Solutions, Inc.



## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,250.00 | $ | $ 7,250.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 3,300.00 | 1,373.54 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 702.00 | 0.00 |
| Commissions | 9,500.00 | | 9,500.00 | Hazard Insurance | 166.00 | 166.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 740.00 | 740.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 16,750.00 | $ 0.00 | $ 16,750.00 | Total | $ 4,908.00 | $ 2,281.54 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.                                                              Completed [ ] Jointly [x] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES — Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| | | *** SEE ADDENDUM *** | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Bank of America | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. 02776-11148 | $ 15,013.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 15,013.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 710,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1,065.00 | |
| Total Assets a. | $ 725,013.00 | Net Worth (a minus b) ► $ 668,226.00 | Total Liabilities b. | $ 56,787.00 |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 95 Cleopatra Dr Pleasant Hill, CA, 94523 | H | SFR | $ 710000 | $ 560500 | $ 0 | $ 4002 | $ 905 | $ 0 |
| | | | | | | | | |
| | | | | | | | | |
| | | Totals | $ 710000 | $ 560500 | $ 0 | $ 4002 | $ 905 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 560,500.00 |
| e. Estimated prepaid items | 2,373.57 |
| f. Estimated closing costs | 12,530.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 575,403.57 |
| j. Subordinate financing | 68,000.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |
| closing costs 2nd | -150.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 544,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 544,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -36,446.43 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | x | | |
| b. Have you been declared bankrupt within the past 7 years? | | x | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| d. Are you a party to a lawsuit? | | x | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| h. Is any part of the down payment borrowed? | | x | | |
| i. Are you a co-maker or endorser on a note? | | x | | |
| j. Are you a U.S. citizen? | x | | | |
| k. Are you a permanent resident alien? | | x | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| m. Have you had an ownership interest in a property in the last three years? | | x | | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 6/21/06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☐ Female  ☒ Male | Sex: | ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | | CAPITOL MORTGAGE CORPORATION |
| ☐ Face-to-face interview | Interviewer's Signature | Date 06/14/2006 | 10471 GRANTLINE RD STE 100 Elk Grove, CA 95624 |
| ☐ Mail | | |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (916) 714-3331 | |

VMP-21N(CA) (0512).01    Page 3 of 4    0090025164

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

Addendum for Loan # : 0090025164 - Marouane  Ouziz

---- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :BANK OF AMERICA | Acct. # | : 402421202070 |
| Address | : | Balance | : $9,808.00 |
| | | Payment | : $134.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :AMEX | Acct. # | : -220145311014375662 |
| Address | : | Balance | : $9.00 |
| | | Payment | : $9.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :HSBC/BSTBY | Acct. # | : 169601-0101510054 |
| Address | : | Balance | : $1,067.00 |
| | | Payment | : $11.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :CHASE | Acct. # | : 4417121056136859 |
| Address | : | Balance | : $3,488.00 |
| | | Payment | : $69.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :WELLS FARGO | Acct. # | : 65465419903400001 |
| Address | :95 Cleopatra Dr | Balance | : *$88,500.00 |
| | | Payment | : [$702.00] |
| C/S/Z | : | Rem. Term | :    123 |
| Acct. Type | :Mortgage | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :HSBC/LEVITZ | Acct. # | : 720624-4103822074 |
| Address | : | Balance | : $1,930.00 |
| | | Payment | : $57.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :PATELCO CREDIT UNION | Acct. # | : 42839601 |
| Address | : | Balance | : $40,485.00 |
| | | Payment | : $785.00 |
| C/S/Z | : | Rem. Term | :     51 |
| Acct. Type | :Installment | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :GMAC Mortgage | Acct. # | : |
| Address | :95 Cleopatra Dr | Balance | : *$472,000.00 |
| | | Payment | : [$3,300.00] |
| C/S/Z | : | Rem. Term | :    360 |
| Acct. Type | :Mortgage | | |
| In Name Of | :Marouane  Ouziz | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | | Date: | Co-Borrower's Signature: | | Date: |
|---|---|---|---|---|---|
| X | | 6/21/06 | X | | |

Addendum for Loan # : 0090025164 - Marouane  Ouziz

--- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :GMAC Mortgage | Acct. # | : |
| Address | :95 Cleopatra Dr | Balance | : *$472,000.00 |
| | | Payment | : [$3,300.00] |
| C/S/Z | : | Rem. Term | : 360 |
| Acct. Type | :Mortgage | | |
| In Name Of | :Marouane  Ouziz | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | | X | |

CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:   Marouane   Ouziz | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:   0090025164 |



Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:   X | Date   [signature] | Co-Borrower's Signature:   X | Date |
|---|---|---|---|

0090025164
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N(CA) (0512).01

Page 4 of 4

# EXHIBIT 3

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower

Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | X Conventional | Other (explain): HELOC Second | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | FHA | USDA/Rural Housing Service | | | 0090025172 |

| Amount | Interest Rate | No. of Months | Amortization Type: | Fixed Rate | Other (explain): |
|---|---|---|---|---|---|
| $ 68,000.00 | 5.250 % | 180 | | GPM | X ARM (type): HELOC SECOND AQ 5YR/ |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | | No. of Units |
|---|---|---|
| 95 Cleopatra Drive, Pleasant Hill, CA 94523 | | 1 |

| Legal Description of Subject Property (attach description if necessary) As more particularly described in exhibit "A" attached hereto and made a part hereof. | Year Built 1951 |
|---|---|

| Purpose of Loan | Purchase | Construction | Other (explain): | Property will be: |
|---|---|---|---|---|
| | X Refinance | Construction-Permanent | | X Primary Residence / Secondary Residence / Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | made / to be made |
|---|---|---|---|---|---|
| 2005 | $ 590,000.00 | $ 560,000.00 | Cash-Out/Other | Cost: $0.00 | |

| Title will be held in what Name(s) Marouane Ouziz | Manner in which Title will be held Individual | Estate will be held in: X Fee Simple / Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) Marouane Ouziz | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) (925) 825-6885 | DOB (mm/dd/yyyy) 04/05/1980 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| X Married (include registered domestic partners) / Separated / Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 1 ages 5 | Married (include registered domestic partners) / Separated / Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) X Own / Rent 1 No. Yrs. 95 Cleopatra Drive Pleasant Hill, CA 94523 | Present Address (street, city, state, ZIP) Own / Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address 95 Cleopatra Drive Pleasant Hill, CA 94523 | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) Own / X Rent 3 No. Yrs. 1062 Capitol Ave San Francisco, CA 94112 | Former Address (street, city, state, ZIP) Own / Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Name & Address of Employer Swipe USA 217 Church St San Francisco, CA 94114 | Self Employed | Yrs. on this job 6 Yrs. employed in this line of work/profession 6 | Name & Address of Employer | Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|---|---|

| Position/Title/Type of Business Sales Director | Business Phone (incl. area code) (415) 748-2254 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | Self Employed | Dates (from - to) | Name & Address of Employer | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | Self Employed | Dates (from - to) | Name & Address of Employer | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

0090025172
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N(CA) (0512).01
Page 1 of 4
VMP Mortgage Solutions, Inc.

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,250.00 | $ | $ 7,250.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 3,300.00 | $ 1,832.00 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 702.00 | 297.50 |
| Commissions | 9,500.00 | | 9,500.00 | Hazard Insurance | 166.00 | 166.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 740.00 | 740.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 16,750.00 | $ 0.00 | $ 16,750.00 | Total | $ 4,908.00 | $ 3,035.50 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [ x ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| | | *** SEE ADDENDUM *** | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Bank of America | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. 02776-11148 | $ 15,013.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 15,013.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 710,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1,065.00 | |
| Total Assets a. | $ 725,013.00 | Net Worth (a minus b) ► $ 668,226.00 | Total Liabilities b. | $ 56,787.00 |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 95 Cleopatra Dr Pleasant Hill, CA, 94523 | R SFR | $ 710000 | $ 560500 | $ 0 | $ 4002 | $ 905 | $ 0 |
| | | | | | | | |
| | Totals | $ 710000 | $ 560500 | $ 0 | $ 4002 | $ 905 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 560,500.00 |
| e. Estimated prepaid items | 150.00 |
| f. Estimated closing costs | -293.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 560,357.00 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |
| new first mortgage | 544,000.00 |
| closing costs 1st | -14,833.67 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 68,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 68,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -36,809.33 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through j, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | x | | |
| b. Have you been declared bankrupt within the past 7 years? | | x | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| d. Are you a party to a lawsuit? | | x | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| h. Is any part of the down payment borrowed? | | x | | |
| i. Are you a co-maker or endorser on a note? | | x | | |
| j. Are you a U.S. citizen? | x | | | |
| k. Are you a permanent resident alien? | | x | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| m. Have you had an ownership interest in a property in the last three years? | | x | | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in the application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 6/21/06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | | | CO-BORROWER | | | |
|---|---|---|---|---|---|---|---|
| [ ] I do not wish to furnish this information. | | | | [ ] I do not wish to furnish this information. | | | |
| Ethnicity: | [ ] Hispanic or Latino | [x] Not Hispanic or Latino | | Ethnicity: | [ ] Hispanic or Latino | [ ] Not Hispanic or Latino | |
| Race: | [ ] American Indian or Alaska Native | [ ] Asian | [ ] Black or African American | Race: | [ ] American Indian or Alaska Native | [ ] Asian | [ ] Black or African American |
| | [ ] Native Hawaiian or Other Pacific Islander | [x] White | | | [ ] Native Hawaiian or Other Pacific Islander | [ ] White | |
| Sex: | [ ] Female | [x] Male | | Sex: | [ ] Female | [ ] Male | |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| [ ] Face-to-face interview | Interviewer's Signature | Date 06/14/2006 | CAPITOL MORTGAGE CORPORATION 10471 GRANTLINE RD STE 100 |
| [ ] Mail | | | Elk Grove, CA 95624 |
| [x] Telephone | Interviewer's Phone Number (incl. area code) (916) 714-3331 | | |
| [ ] Internet | | | |

Addendum for Loan # : 0090025172 - Marouane  Ouziz

--- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :BANK OF AMERICA | Acct. # | : 402421202070 |
| Address | : | Balance | : $9,808.00 |
| | | Payment | : $134.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :AMEX | Acct. # | : -220145311014375662 |
| Address | : | Balance | : $9.00 |
| | | Payment | : $9.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :HSBC/BSTBY | Acct. # | : 169601-0101510054 |
| Address | : | Balance | : $1,067.00 |
| | | Payment | : $11.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :CHASE | Acct. # | : 4417121056136859 |
| Address | : | Balance | : $3,488.00 |
| | | Payment | : $69.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :WELLS FARGO | Acct. # | : 65465419903400001 |
| Address | :95 Cleopatra Dr | Balance | : *$88,500.00 |
| | | Payment | : [$702.00] |
| C/S/Z | : | Rem. Term | :    123 |
| Acct. Type | :Mortgage | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :HSBC/LEVITZ | Acct. # | : 720624-4103822074 |
| Address | : | Balance | : $1,930.00 |
| | | Payment | : $57.00 |
| C/S/Z | : | Rem. Term | : Revolving |
| Acct. Type | :Revolving | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :PATELCO CREDIT UNION | Acct. # | : 42839601 |
| Address | : | Balance | : $40,485.00 |
| | | Payment | : $785.00 |
| C/S/Z | : | Rem. Term | :    51 |
| Acct. Type | :Installment | | |
| In Name Of | :Marouane  Ouziz | | |

| | | | |
|---|---|---|---|
| Creditor | :GMAC Mortgage | Acct. # | : |
| Address | :95 Cleopatra Dr | Balance | : *$472,000.00 |
| | | Payment | : [$3,300.00] |
| C/S/Z | : | Rem. Term | :    360 |
| Acct. Type | :Mortgage | | |
| In Name Of | :Marouane  Ouziz | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | | Date: | Co-Borrower's Signature: | | Date: |
|---|---|---|---|---|---|
| X | | 6/31/0 | X | | |

Addendum for Loan # : 0090025172 - Marouane  Ouziz

### --- LIABILITIES ---

```
Creditor     :GMAC Mortgage          Acct. #    :
Address      :95 Cleopatra Dr        Balance    : *$472,000.00
                                     Payment    : [$3,300.00]
C/S/Z        :                       Rem. Term  :    360
Acct. Type   :Mortgage
In Name Of   :Marouane  Ouziz
```

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | | X | |

| CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Marouane Ouziz | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 0090025172 |



**Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."**

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date 6/21/06 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

0090025172
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N(CA) (0512).01

Page 4 of 4

# EXHIBIT 4

07/04/2008 20:56 FAX 212 566 5590 S&C LLP 125 BD 27FL A @037/039

Print Date: June 29, 2006 2:57 PM | Page 1

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN | | | | OMB No. 2502-0265 |
|---|---|---|---|---|---|

**Chicago Title Company**

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. [ ] FHA | 2. [ ] FmHA | 3. [ ] Conv. Unins |
| 4. [ ] VA | 5. [ ] Conv. Ins | |
| 6. ESCROW NUMBER: 06-60304208-MA | | 7. LOAN NUMBER: UB 90025164 |
| 8. MORTGAGE INSURANCE CASE NUMBER: | | |

NOTE: THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. NAME & ADDRESS OF BORROWER: | E. NAME & ADDRESS OF SELLER: | F. NAME & ADDRESS OF LENDER: |
|---|---|---|
| Marouane Outiz 95 Cleopatra Dr Pleasant Hill, CA 94523 | | GreenPoint Mortgage Funding, Inc. 410 Rocky Ridge Drive, Ste 260 95661 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 95 Cleopatra Dr Pleasant Hill, California 94523 | Chicago Title Company PLACE OF SETTLEMENT: 2410 Fair Oaks Blvd., Suite 110 Sacramento, CA 95825 | |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,345.27 | 403. | |
| 104. Payoff to GMAC Mortgage Corporation | 476,765.00 | 404. | |
| 105. Payoff to Wells Fargo Home Equity | 89,204.17 | 405. | |
| Adjustments: Items Paid by Seller In Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | ·*· |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 573,314.44 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see Instructions) | |
| 202. Principal amount of new loan(s) | 544,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. 2nd New Loan | 68,000.00 | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 612,000.00 | 520. Total Reductions in Amount Due Seller | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 573,314.44 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 612,000.00 | 602. Less reduction in amount due seller (line 520) | |
| 303. CASH ( FROM )(X TO) BORROWER | 38,685.56 | 603. CASH ( TO ) ( FROM) SELLER | |

Print Date: June 29, 2006 2:57 PM

Page 2

| L. SETTLEMENT CHARGES | | |
|---|---|---|
| Escrow: 06-60304208-MA   Locate: CACI17707-7734-4603-003910716I | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| Division of Commission (line 700) as follows: | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee to PenStar Appraisal | 425.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Lender pays YSP $12,920.00 POC  $12920.00 POC to Capitol Mortgage | | |
| 808. Doc Prep to GreenPoint Mortgage Funding, Inc. | 390.00 | |
| 809. Tax Service Fee to GreenPoint Mortgage Funding, Inc. | 79.00 | |
| 810. Processing / Admin Fee to Capitol Mortgage | 565.00 | |
| 811. Flood Cert to GreenPoint Mortgage Funding, Inc. | 11.00 | |
| 812. Underwriting Fee to GreenPoint Mortgage Funding, Inc. | 250.00 | |
| 813. | | |
| 814. Other Charges - See Attached | 150.00 | |
| 901. Interest @ $115.51 per day fr 6/28/2006 to 7/1/2006 to GreenPoint Mortgage Funding, Inc. | 346.53 | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. | | |
| 905. | | |
| 1001. Hazard Insurance 3 months @ $63.82 per month to GreenPoint Mortgage Funding, Inc. | 191.46 | |
| 1002. Mortgage Insurance        months @ $        per month | | |
| 1003. City property taxes        months @ $        per month | | |
| 1004. County property taxes 6 months @ $321.16 per month to GreenPoint Mortgage Funding, Inc. | 1,926.96 | |
| 1005. Annual assessments        months @ $        per month | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Adjustment | -574.52 | |
| 1101. Settlement or Closing Fee to Chicago Title | 550.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees | | |
| 1107. Endorsement Fee(s) | 75.00 | |
| 1108. Title insurance  Chicago Title Insurance Company | 1,450.00 | |
| 1109. Lender's coverage - 06-ALTA Loan w/Form 1 - 1992 for $666,400.00; $1,450.00 | | |
| 1110. Owner's coverage | | |
| 1111. Other Policy Duplicate original policy | 250.00 | |
| 1112. Draw Deed | 50.00 | |
| 1113. Outside Courier/Special Messenger | 60.00 | |
| 1114. Additional Work Charge Email doc fee | 50.00 | |
| 1115. | | |
| 1116. | | |
| 1201. Recording Fees: Deed $10.00   Mortgage $129.00   Release $0.00 | 139.00 | |
| 1202. City/county tax/stamps: $0.00   Mortgage $ | | |
| 1203. State tax/stamps: Deed $    Mortgage $ | | |
| 1204. Recording 2nd Deed of Trust | 45.00 | |
| 1205. | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. Signing/ Notary Fee to ASAP | 150.00 | |
| 1304. Insurance premium due to Farmers Insurance | 765.84 | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | 7,345.27 | |

# EXHIBIT 5

07/04/2008 18:55 FAX 212 558 3340        SAC LLP 125 BD 27FL A        ☒037/038

Print Date: June 29, 2006 2:57 PM                00900025172                Page 1

| A. U.S. Department of Housing and Urban Development | 8. TYPE OF LOAN | | | | OMB No. 2502-0265 |
| Settlement Statement | 1. [ ] FHA   2. [ ] FmHA   3. [ ] Conv. Unins | | | | |
| | 4. [ ] VA   5. [ ] Conv. Ins | | | | |
| Chicago Title Company | 6. Escrow Number:      7. Loan Number: | | | | |
| | 06-60304208-HA        LN- | | | | |
| | 8. Mortgage Insurance Case Number: | | | | |

NOTE: THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
| Marouane Oustir | | GreenPoint Mortgage Funding, Inc. |
| 95 Cleopatra Dr | | 9410 Rocky Ridge Drive, Ste 260 |
| Pleasant Hill, CA 94523 | | 95661 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
| 95 Cleopatra Dr | Chicago Title Company | 10/03/2006 |
| Pleasant Hill, California 94523 | Place of Settlement | |
| | 2410 Fair Oaks Blvd., Suite 110 | |
| | Sacramento, CA 95825 | |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,349.27 | 403. | |
| 104. Payoff to GMAC Mortgage Corporation | 476,765.00 | 404. | |
| 105. Payoff to Wells Fargo Home Equity | 89,204.17 | 405. | |
| Adjustments: Items Paid by Seller in Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | -1 |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. Gross Amount Due From Borrower | 573,314.44 | 420. Gross Amount Due to Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 544,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. 2nd New Loan | 68,000.00 | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 612,000.00 | 520. Total Reductions In Amount Due Seller | |
| 301. Gross amount due from borrower (line 120) | 573,314.44 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 612,000.00 | 602. Less reduction in amount due seller (line 520) | |
| 303. CASH ( FROM) (XX TO) BORROWER | 38,685.56 | 603. CASH ( TO) ( FROM) SELLER | |

07/04/2006 18:58 FAX 212 558 3340    SAC LLP 125 BD 27FL A    ☒038/039

Print Date: June 29, 2006 2:57 PM    Page 2

| L. SETTLEMENT CHARGES | Escrow: 06-66964208-HA   Locate: CACI2770P-7794-1603-009107161 | | |
|---|---|---|---|
| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| Division of Commission (line 700) as follows: | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **801. Loan Origination Fee** | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee to Peralar Appraisal | | 425.00 | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Lender pays YSP $12,920.00 POC $12920.00 POC to Capital Mortgage | | | |
| 808. Doc Prep to GreenPoint Mortgage Funding, Inc. | | 390.00 | |
| 809. Tax Service Fee to GreenPoint Mortgage Funding, Inc. | | 79.00 | |
| 810. Processing / Admin Fee to Capital Mortgage | | 565.00 | |
| 811. Flood Cert to GreenPoint Mortgage Funding, Inc. | | 11.00 | |
| 812. Underwriting Fee to GreenPoint Mortgage Funding, Inc. | | 250.00 | |
| 813. | | | |
| 814. Other Charges - See Attached | | 190.00 | |
| 901. Interest @ $115.51 per day fr 6/28/2006 to 7/1/2006 to GreenPoint Mortgage Funding, Inc. | | 346.53 | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. | | | |
| 905. | | | |
| 1001. Hazard Insurance 3 months @ $63.82 per month to GreenPoint Mortgage Funding, Inc. | | 191.46 | |
| 1002. Mortgage Insurance    months @ $    per month | | | |
| 1003. City property taxes    months @ $    per month | | | |
| 1004. County property taxes 6 months @ $321.16 per month to GreenPoint Mortgage Funding, Inc. | | 1,926.96 | |
| 1005. Annual assessments    months @ $    per month | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Adjustment | | -574.57 | |
| 1101. Settlement or Closing Fee to Chicago Title | | 550.00 | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary fees | | | |
| 1107. Endorsement Fee(s) | | 75.00 | |
| 1108. Title Insurance  Chicago Title Insurance Company | | 1,450.00 | |
| 1109. Lender's coverage - 06-ALTA Loan w/Form 1 - 1992 for $666,400.00; $1,450.00 | | | |
| 1110. Owner's coverage | | | |
| 1111. Other Policy Duplicate original policy | | 250.00 | |
| 1112. Draw Deed | | 50.00 | |
| 1113. Outside Courier/Special Messenger | | 60.00 | |
| 1114. Additional Work Charge Email doc fee | | 50.00 | |
| 1115. | | | |
| 1116. | | | |
| 1201. Recording Fees:  Deed $10.00  Mortgage $139.00   Release $0.00 | | 139.00 | |
| 1202. City/county tax/stamps: $0.00   Mortgage $ | | | |
| 1203. State tax/stamps: Deed $   Mortgage $ | | | |
| 1204. Recording 2nd Deed of Trust | | 43.00 | |
| 1205. | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Signing/ Notary Fee to ASAP | | 150.00 | |
| 1304. Insurance premium due to Farmers Insurance | | 765.84 | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K)** | | 7,345.27 | |