SCOTT A. FLAXMAN (SBN 241285)
**SCOTT FLAXMAN LAW**
21 Buena Vista Road
South San Francisco, California 94080
Telephone: (415) 571-0582
Facsimile:  (650) 952-0409
scottf@scottflaxmanlaw.com

**ATTORNEY FOR PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MAROUANE OUZIZ<br><br>                          Plaintiff<br><br>vs.<br><br>**GREENPOINT MORTGAGE FUNDING**,<br>**CAPITOL MORTGAGE** et al.<br><br><br><br><br><br>                          Defendants | Case No.: 3:08-cv-02201-WHA<br><br>[Assigned for All Purposes to the<br>Honorable Judge William H. Alsup]<br><br>JOINT CASE MANAGEMENT<br>STATEMENT<br><br>**Date:            August 7, 2008**<br>**Time:            11:00 a.m.**<br>**Courtroom:     9, (19th Floor)** |

Pursuant to Fed. R. Civ. P. 16(c) and 26(f) and Civil Local Rule 16-9, the Plaintiff,  Marouane

Ouziz ("Mr. Ouziz")  and Defendants GreenPoint Mortgage Funding, Inc. ("GPM") and Capitol

Mortgage Corporation  ("CMC") submit the following Case Management Statement.

1

1.    <u>Jurisdiction and Service</u>

Personal jurisdiction over Defendants is proper before this Court.  Mr. Ouziz's Complaint

contains five causes of action.  Counts I and II arise under and are brought pursuant to the

Federal Real Estate Settlement Procedures Act, 12 U.S.C. §2601 <u>et</u> <u>seq.</u> (hereinafter

"RESPA"); thus federal subject matter jurisdiction is properly founded upon 28 U.S.C.

§ 1331. Count III is brought pursuant the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1961 et seq. ("RICO").   This Court has supplemental jurisdiction over the

pendent state claims, set out in Counts IV and V pursuant to 28 U.S.C. §1367.


Mr. Ouziz properly served all Defendants in this matter and dismissed, without prejudice,

Captial One Services, David Caldera and Andrew Gale.


Defendant Greenpoint ("GPM") and Capitol Mortgage Corporation ("CMC")  have filed

Answers to Mr. Ouziz's Complaint and GPM filed a Counterclaim.  Defendant Nafai

indicated he would be speaking with a Legal Aid attorney but did not give any further

information.

   **GPM:**  Defendant GPM does not dispute jurisdiction or service.

   **Gregory Teeter, Individually and as Agent for Captial Mortgage Corporation and**

**Amanda Rawls (Hereafter "CMC") :**

 CMC does not dispute jurisdiction or service.

2

2.  Statement of Undisputed Facts

GPM paid CMC a $12,920.00 fee, outside of closing, which was associated with a new first lien in the amount of $544,000.00 secured by Mr. Ouziz's home ("First Loan").  GPM paid CMC a $510.00 fee, outside of closing, which was associated with at $68,000.00 second lien against Mr. Ouziz's home. ("Second Loan").   The only paperwork associated with these two transactions  that Mr. Ouziz signed was on June 21st, 2006.

On June 20th, 2006,  A document entitled, "Prepayment Fee Allonge" was created by GPM and its purpose was to amend any then existing loan documents to add a three year pre-payment penalty to the $544,000.00 First Loan.

On June 21st, 2006,  Mr. Ouziz signed a document entitled, "Mailing Address Certification" ("Certification") among other items listed on this Certification, the Certification contains the following information:

Home Phone:     925 825 6885
Business Phone: 415 748 2254
Cell Phone:      415 748 2254

Two Documents with the words Empower-Verbal Voe ("GPM VOE") appear in Mr. Ouziz's loan file produced by GPM.  Both documents contain, along with other information, the following information:

Current Employment      Borrower

Company Name            Swipe

3

Phone #                        415-748-2254

Source of Phone #        1003

Verification Method        verbal

Position/Title                Sales Director

VOE Done by                    Mauricia Rilling

VOE Completion Date        June 26, 2006

Name/Title                        david


GPM funded the two Ouziz loans on June 28, 2006.


On June 20, 2006 at 11:00 a.m. Capitol Mortgage sent a fax from the phone number

916 691 5546 to GPM.  This fax was a Form 4506, Request for Copy of Tax Return and was

signed by Mr. Ouziz on June 21st, 2006.


On June 14, 2006, Quoc Viet Cao Prepared a document containing the following information:

Appraisal Report of Single Family Residence at 95 Cleopatra Drive Pleasant Hill, CA 94523

As of: 6/14/06


Prepared For:
Kevin Nafai
Capitol Mortgage Corp.
10471 Grant Line Road Suite #100
Elk Grove, CA 95624

Prepared By:
Quoc Viet Cao
Penstar Appraisal
3626 Place De Louis
San Jose, Ca 95148

**CASE MANAGEMENT STATEMENT**

A document entitled, "Invoice" and prepared by Penstar Appraisal was prepared on June 15, 2006 and contains the following information, in relevant part:

Date: 6/15/06                                        File No. CLEOPA95
                                                     Case No.

Prepared for:
Kevin Nafai
Capitol Mortgage Corp.
10471 Grant Line Road Ste #100
Elk Grove, CA 95624
E-mail: ksuperrealty@yahoo.com

Property Appraised:
Ouziz
95 Cleopatra Drive
Pleasant Hill, CA 94523

There are four different sets of Freddie Mac Form 65's ("Form 65") in Mr. Ouziz's loan file.

Each, in the relevant section, contains a different date.

Form 65 #1, in the relevant area, contains the following information:

Interviewer's Name: Amanda Rawls
Interviewer's signature: Amanda Rawls (signed)   Date: 6/9/06
Interviewer's phone number: 916-691-5515
To be completed by interviewer:
This application was taken by telephone  ("Form 65 dated June 9th, 2006)

Form 65 #2,  in the relevant area, contains the following information:
Interviewer's Name: Amanda Rawls
Interviewer's signature:  Amanda Rawls (signed)   Date: 6/14/06
Interviewer's phone number: 916-691-5515
To be completed by interviewer:
This application was taken by telephone ("Form 65 dated June 14th, 2006")

Form 65 #3,  in the relevant area, contains the following information:
Interviewer's Name: Amanda Rawls
Interviewer's signature:  Amanda Rawls (signed)   Date: 6/20/06
Interviewer's phone number: 916-691-5515
To be completed by interviewer:
This application was taken by telephone ("Form 65 dated June 20th, 2006")

Form 65 #4, in the relevant area, contains the following information:

Interviewer's Name (print or type): [Blank]

Interviewer's signature: [Blank]   Date: 6/14/06

Interviewer's phone number: 916-714-3331

To be completed by interviewer:

This application was taken by telephone ("Blank Form 65 dated June 14th ,2006").

**GPM:**  GPM does not stipulate to the facts stated above by plaintiff.  To the extent Plaintiff is quoting documentation included in Plaintiff's loan origination files, GPM simply states that the documents speak for themselves.  It is GPM's position that the following relevant facts are undisputed:

1.      In June 2006, Plaintiff refinanced the real property located at 95 Cleopatra Drive, Pleasant Hill, California (the "Property") by submitting two loan applications to GPM, through his broker of record Capitol Mortgage Corp. ("CMC"), for funding (the "Loans"): (1) A first lien priority loan in the amount of $544,000 that was secured by a Deed of Trust ("DOT") on the Property, and (2) A second lien priority loan in the amount of $68,000 that was secured by a DOT on the PROPERTY.

2.      The only information that Plaintiff received prior to the funding of the Loans came from information supplied by defendant Nafai.  Plaintiff had no direct contact with GPM prior to the funding of the Loans.

3.      CMC performed services on behalf of Plaintiff during the loan origination process that were necessary, essential and related to the funding of the Loans by GPM.

4.      GPM funded the Loans based on the information that was contained in the loan applications that were submitted to it by CMC on behalf of Plaintiff.

5.    GPM sold the Loans on the secondary market and transferred servicing in September and October of 2006.  Therefore, after 2006 GPM has had not interest in either the Loans or the Property.

**CMC**: CMC does not stipulate to the facts listed in Plaintiff's statement of Undisputed facts, paragraph 2 of GPM's statement of undisputed facts, and does not have sufficient information to stipulate to paragraph 4 of GPM's statement of undisputed facts. Otherwise, CMC stipulates to GPM's undisputed facts 1, 3 and 5. To the extent Plaintiff is quoting documentation included in Plaintiff's loan origination files, the documents speak for themselves.

Facts in Dispute

Mr. Ouziz did not have any notice of the three year prepayment penalty associated with his First loan until June 21, 2006.  Both GPM and CMC state they don't know whether this is true or not, but deny its truth on that basis.

Mr. Ouziz relied on Kevin Nafai's ("Nafai") statements as Nafai held himself out to be an agent, independent contractor or employee of CMC and CMC's actions ratified this reasonable belief. CMC disputes that a person reasonably could have been lead to believe that Nafai was an agent, employee or independent contractor of CMC.  GPM does not know which position is correct or not for lack of information.

Mr. Ouziz did not know that there was going to be two yield spread premium payments made from GPM to CMC and he did not know that these payments had a direct, material affect on the

7

loans that he was receiving.  Mr. Ouziz did not understand that the yield spread premium

payment was a payment from a wholesale lender (GPM) to a broker (CMC) in exchange for

having Mr. Ouziz accept above-par interest rate loans.

Mr. Ouziz believes that GPM and CMC conspired to keep fees, costs and other expenses hidden

from Mr. Ouziz and that GPM and CMC fabricated, back-dated and photo-shopped loan

documents and had a pattern and practice of engaging in this behavior with numerous borrowers

and many transactions.  GPM and CMC deny this.

CMC contends that Amanda Rawls conducted phone interviews with Mr. Ouziz (as detailed

above) on June 9th, 2006, June 14th, 2006 and June 20th, 2006 in which Mr. Ouziz's monthly

income was discussed.  Further CMC contends that some, as yet, unidentified employee, agent or

independent contractor (with a different (916) area code phone number than Amanda Rawls) on

June 14th, 2006 conducted a phone interview with Mr. Ouziz wherein his monthly income and

job title was discussed.

Mr. Ouziz contends that he never spoke with Amanda Rawls or any nameless agent, employee or

independent contractor of CMC and that he never submitted a $16,750.00 monthly income figure

to CMC or GPM.  Furthermore, the "loan applications" list Mr. Ouziz as having the job title,

"Sales Director."  Mr. Ouziz never held this title at Swipe.

GPM (as detailed above in the GPM-VOE discussion) contends that Mauricia Rilling called

"david" or "DAVID" (there are two versions of the same document in GPM's loan file as stated

by GPM.  The only difference between the two documents is that one has "david" (all lower-case letters) whereas the other has DAVID (all Caps)) at Swipe USA on June 26, 2006 to confirm Mr. Ouziz's income at the telephone number: 415-748-2254.

Mr. Ouziz contends that the Certification (as described above) clearly depicts his cell phone number as 415-748-2254 and that no one by the name of David was employed at Swipe on June 26, 2006; thus GPM's VOE documents are fraudulent.

GPM contends, in its Counterclaim, that GPM relied on Mr. Ouziz's alleged false income representation in making its decision to fund the loans.  GPM also contends that its employee did a Verification of Income on June 26th, 2006 prior to funding the loan and as described above. Mr. Ouziz contends that GPM or CMC created the $16,750.00 monthly income figure and that GPM and CMC have a pattern and practice of creating fraudulent monthly income figures.

**GPM:**  GPM has not made any of the contentions that Plaintiff states above.  Many of the statements made by Plaintiff in the above sections appear to be assumptions made by Plaintiff based on the contents of documents contained in the loan files that were voluntarily produces by GPM.  Therefore, GPM states that the documents contained in the loan origination files speak for themselves, and do not create the contentions or admissions of GPM as stated by Plaintiff.

**CMC**: Likewise, CMC has not made any of the contentions that Plaintiff states above. The loan files speak for themselves, and do not create the contentions alleged by Plaintiff. CMC does not agree with the numerous assumptions alleged by Plaintiff in his disputed facts section. The facts in dispute will generally involve Plaintiff's advance knowledge of the loan terms, the

**CASE MANAGEMENT STATEMENT**

information supplied by Plaintiff to defendants regarding his income, and the allegation that

defendant  Nefai was an agent or employee of CMC.

2.    Legal Issues

Mr. Ouziz's Position:

RESPA

Mr. Ouziz contends that GPM's payment of the YSP to CMC and CMC's receipt of the YSP is a

RESPA violation.

### RESPA Statement of Policy 2001-1

In the Department of Housing and Urban Development ("HUD") Statement of Policy issued in

2001, 66 Fed. Reg. 53052 (2001), ("SOP 2001-1"), HUD sought to clarify both its interpretation

of Section 8 of RESPA and its Statement of Policy 1999-1 ("SOP 1999-1"). SOP 2001-1 at 1. In

this statement of policy, HUD punctuated the importance of disclosure and HUD outlined a two-

part test along with other rules and guidelines for a fact-finder and HUD personnel to determine

when a YSP payment is **illegal**.

### Disclosure

HUD emphasized the importance of disclosure of the YSP payment to the borrower:

"Besides establishing the two-part test for determining the legality of YSP, the SOP-1999-1

discussed the importance of disclosure in permitting borrowers to choose the best loan for

themselves. . .**Timely** disclosure would permit them to shop for preferable origination costs and

mortgage terms and agree to those costs and terms that meet their needs." SOP 2001-1 at 5-6 [emphasis added].

## Meaningful Disclosure

HUD has also highlighted the importance of the lender disclosing **meaningful** information to the borrower early enough in the process so that the borrower can make an informed decision based upon all known fees and costs. SOP 2001 at 15.  "While the disclosure on the GFE and HUD-1 is **<u>required</u>**, the Department is aware and has stated that the current GFE/HUD-1 disclosure framework is often insufficient to adequately inform consumers about yield spread premiums. . ." SOP 2001-1 at 16. [emphasis added].

## Unearned Fees

In addition to disclosure, the two-part test HUD has outlined for determining whether a YSP payment is illegal is comprised of the following components: 1) whether goods or facilities were actually furnished or services were actually performed for the compensation paid and 2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.  SOP 2001-1 at 10.

In further clarifying the **<u>first</u>** prong of the two-part test, HUD stated [in relevant part]:

"Section 8 [of the RESPA] prohibits the giving and accepting of fees, kickbacks or things of value for the referral of settlement services and also unearned fees.  It is therefore prudent for a lender to take action so as to ensure brokers are performing 'compensable services**.'**  Further,

HUD pointed out that it is concerned that a fee for steering a customer to a particular lender could be disguised as compensation for 'counseling-type' activities. . .HUD stated it would be satisfied that no steering occurred if it found that:

Counseling gave the borrower the opportunity to consider products from at least three different lenders; the entity performing the counseling would receive the same compensation regardless of which lender's products were ultimately selected; **and** [emphasis added] any payment made for the "counseling-type" services is reasonably related to the services performed and not based on the amount of the loan business referred to a particular lender." SOP 1999-1, section C.

Neither GPM nor CMC made any disclosure about how the YSP payment would have an adverse affect on the terms, conditions, fees, interest and expense of the loan Mr. Ouziz was to be receiving prior to its cryptic reference at the day Mr. Ouziz went to sign his loan documents: June 21st, 2006.

GPM did not provide Mr. Ouziz with timely disclosure of the impact on Mr. Ouziz of the YSP GPM  made to CMC of $12,920.20 on the first loan or the $510.00 YSP kickback GPM made to CMC on the second loan.  *Neither GPM nor CMC made timely or understandable disclosure to Mr. Ouziz that this YSP fee was related to and would affect the terms, conditions, fees, costs and interest rate associated with the loan.*

Under Section 8 of the RESPA as explained by SOP 2001-1, GPM and CMC should have made timely disclosure to adequately inform Mr. Ouziz about the true nature of the additional fees and costs associated with the YSP payment.

YSP is an esoteric term known to only industry insiders and few others.  In most cases a fact-finder would agree that a covert reference to a YSP made for the first and only time on the day the borrower signed final loan documents would not be a sufficient disclosure to adequately inform a borrower about the true cost of their loan.

CMC's actions in conjunction with GPM's loan to Mr. Ouziz did not meet the standard of, 'compensable services' as required under the RESPA and as clarified by SOP 1999-1 and SOP 2001-1. Under the RESPA, GPM is charged with a duty of ensuring that when it makes a YSP to a mortgage broker, that the mortgage broker has actually performed a compensable service. SOP 2001-1 at 12.  CMC did not perform a compensable brokerage service, but rather merely referred Mr. Ouziz to GPM so that CMC could receive the YSP of $12,920.00 on the First Loan and $510.00 on the Second Loan.

The mortgage-broker expends the same amount of effort and provides the same quality and quantity of service whether it originates an above par (higher interest rate) loan, a par loan, or a below par (lower interest rate) loan.  Because the mortgage broker receives a YSP only when it originates an above par loan, the only "service" for which the YSP is compensation is the broker's "service" of referring an above par loan to the lender.  However, referring loan business, even valuable business, is not a service for which the RESPA permits payment.

12 U.S.C. § 2607(f). GPM's payments of the two YSP kickbacks to CMC were thus in violation of the RESPA.

GPM contends that YSP payments are not per se violations of the RESPA. Mr. Ouziz agrees that YSP payments are not "per se" violations of the RESPA, however "not a per se violation" means that sometimes a YSP payment is a RESPA violation and sometimes it is not. Under these facts the two YSP payments from GPM to CMC were RESPA violations. ***It is a violation of RESPA if the YSP is not fully and meaningfully disclosed, if this necessary disclosure is made, then the YSP can still be a violation of the RESPA depending on the facts as related to the two-part test.***

**GPM and CMC:** It is GPM's position that under the facts in this case the YSP paid to CMC was clearly not a violation of RESPA. The two-part test, that is stated by Plaintiff above, and that has been continuously approved by the Ninth Circuit clearly states that a YSP is allowed under RESPA if (1) services were actually performed by the Broker, and (2) the compensation was "reasonably related" to the services provided. It is clear and undisputed that CMC provided services to Plaintiff in the loan origination process and that absent those services, the Loans would have never been funded by GPM. Therefore, the compensation, in the form of a YSP was clearly related to the services provided.

Civil Rico

Mr. Ouziz contends that a three year prepayment penalty was foisted upon him at closing in the form of a contract addendum that was not bargained for; he had detrimentally relied on

receiving loans with one-year prepayment penalties at that time, June 21, 2006; the detrimental affects of the YSP kickback (higher interest rates) was not clearly, conspicuously, timely and understandably disclosed to him and thus GPM and CMC fraudulently misrepresented the true cost of credit associated with the loans GPM and CMC made to Mr. Ouziz. Furthermore, GPM and CMC have a pattern and practice of engaging in such deceptive activity and have misrepresented the true cost of credit to many borrowers throughout many transactions. GPM and CMC made use of the interstate telephone system in furtherance of this pattern of racketeering activity.

**GPM and CMC:** Plaintiff has provided no facts in support of his theory to support a pattern and practice of deceptive activity by defendants because none exist. The sole relationship between GPM and CMC was that of a Broker and a Lender. Based on the foregoing, there is absolutely no basis for Plaintiff's claim under Civil RICO.


Breach of Fiduciary Duty

CMC admits that it owed a fiduciary duty to Mr. Ouziz. Mr. Ouziz contends CMC breached this duty by self-dealing, i.e. CMC used Mr. Ouziz to self-deal and squeeze extra profit out of Mr. Ouziz's loans, in the form of the two YSP payments it received from GPM without explaining to Mr. Ouziz, as CMC was duty bound to explain, that the Mr. Ouziz would be indirectly paying for the YSP payments through higher interest rate loans. Furthermore, CMC was aware that a 3 year pre-payment was going to be revealed, for the first time, to Mr. Ouziz at the day of Mr. Ouziz's loan closing; CMC was duty bound to disclose the 3 year prepayment penalty and CMC breached this duty by failing to make this requisite disclosure.

**GPM:** This cause of action does not apply to GPM.

**CMC**:  CMC denies the allegations from Plaintiff. It is clear and undisputed that CMC provided services to Plaintiff in the loan origination process and that absent those services, the Loans would have never been funded by GPM.  Therefore, the compensation, in the form of a YSP was clearly related to the services provided.  CMC provided appropriate and timely disclosures to Plaintiff.

Deceit

CMC asserted that they would work to perform the service of getting Mr. Ouziz the best loans with the best interest rates and terms possible.  CMC made this assertion without any intent to perform it as CMC knew it would receive a kick-back from GPM in the form of a YSP in exchange for steering Mr. Ouziz into loans with higher interest rates than Mr. Ouziz could have otherwise received if CMC had not received the YSP payments.  Furthermore, CMC knew that there would be a 3 year prepayment penalty, and not a one year prepayment penalty (as CMC represented to Mr. Ouziz) and therefore represented as a  promise to Mr. Ouziz something it had no intention of performing.

**GPM:**  This cause of action does not apply to GPM.

**CMC**:  CMC denies the allegations from Plaintiff. It is clear and undisputed that CMC provided services to Plaintiff in the loan origination process and that absent those services, the Loans would have never been funded by GPM.  Therefore, the compensation, in the form of a YSP was clearly related to the services provided.  CMC provided appropriate and timely disclosures to Plaintiff.

**CASE MANAGEMENT STATEMENT**

GPM Counter-Claim

GPM contends that Mr. Ouziz fabricated the monthly income amount on what it calls the "loan application" and also operated in concert with as yet undiscovered defendants to defraud GPM.

Mr. Ouziz contends that either CMC or GPM came up with the monthly income figure, created false documents that suggested "phone interviews" were done on three different dates from two different phone numbers and by two different interviewers, including one interviewer that has no name and that there never was a "loan application."

GPM has produced documents from its own internal files wherein a GPM employee purports to have conducted a "verification of employment" with a "David" who was allegedly an employee of Swipe USA [Mr. Ouziz's employer] ("Swipe") on June 26th, 2006.  GPM contends they called Swipe on Mr. Ouziz's cell phone number, (415) 748-2254 even though Mr. Ouziz had stated on the Certification (referenced above) signed by Mr. Ouziz on June 21st, 2006 and contained with the GPM loan file that the number (415) 748-2254 was Mr. Ouziz's cell phone number.   Furthermore this document states that Mr. Ouziz's position at Swipe is, "Sales Director."  Mr. Ouziz never held this position at Swipe.

Furthermore the GPM "loan application" consists of a series of doctored Freddie Mac "Uniform Residential Loan Application" forms that have black, misshapen rectangles covering  the areas of the forms where borrowers are required to place their initials.

        **GPM:** Plaintiff has admitted that he never earned $16,750 per month.  However, the loan application that was submitted to GPM for funding and that was signed on the last page by

Plaintiff clearly states that he earned $16,750 per month.  One of the primary factors that GPM used in approving this loan was the stated income, and therefore GPM relied, to its detriment, on this false, inaccurate and misleading information.  GPM was justified in relying on the information based on Section IX of the loan applications, which appears immediately above the signature line where Plaintiff signed.  Section IX of the loan applications clearly states that by signing the application, Plaintiff is acknowledging, subject to civil liability and criminal penalties, that the information contained therein is true and correct.

Furthermore, GPM has a claim against Plaintiff for Equitable Subrogation.  The two loans that were funded by GPM were in the total amount of $612,000.  Of that, $604,654.73, was used for the sole benefit of Plaintiff to pay off prior existing debt or financial obligations.  Therefore, at a minimum, GPM is entitled to reimbursement in the total amount of $604,654.73.

**CMC**: This claim does not apply to CMC.

Counter-Counterclaim

Mr. Ouziz is in the process of developing his Counter-Counterclaim against GPM and CMC.  GPM has put Mr. Ouziz on notice both through its claim and through documentary evidence that it has produced that agents, independent contractors and/or employees of GPM and CMC fabricated documents and statements in conjunction with Mr. Ouziz's loan application, including but not limited to GPM's fraudulent Verification of Employment Documents as detailed above and CMC's fraudulent "phone interview," "loan application" and monthly income documents as described above.

Furthermore, Mr. Ouziz contends that GPM's Counterclaim was brought merely in an effort to chill Mr. Ouziz's right to petition the courts for relief and not for its ostensible purpose. Evidence of this is that GPM has not been damaged in any way and GPM purposely mentions "defendants to be named later" rather than point to the obvious defendant: CMC which is the only party that directly submitted a monthly income figure to GPM and admits to signing off on that monthly income figure.

Furthermore, GPM either knows that its June 26th, 2006 Verification of Employment is an erroneous or fraudulent document or GPM has to make the argument that its own internal employment verification, which took place two days before loan funding, along with Mr. Ouziz's tax return was ignored by its underwriters in making its decision to fund the two Ouziz loans. No matter which tact GPM takes either its current allegations or its prior documents were misrepresentations.

GPM's loan documents show that GPM verified Mr. Ouziz's employment on June 26th, 2006. GPM funded Mr. Ouziz's loans on June 28, 2006. Thus either GPM's June 26th, 2006 VOE documents are fraudulent or its allegations in its Counterclaim are misrepresentations.

**GPM:**  Plaintiff has yet to file a "Counter-Counter Claim" and GPM will reserve any response until such a claim is filed with the Court.

**CMC**: This claim does not apply to CMC.

**CASE MANAGEMENT STATEMENT**

4. <u>Motions</u>

No motions are currently pending before the Honorable Judge William H. Alsup.

Mr. Ouziz intends on filing a Motion for Summary Judgment

**GPM:** GPM intends on filing a Motion for Summary Judgment or Summary

Adjudication.

**CMC**:  CMC intends on filing a Motion for Summary Adjudication.


5. <u>Amendment of Pleadings</u>

Plaintiff may amend his pleadings and bring a Counter-Counterclaim against GPM and CMC.


6. <u>Evidence Preservation</u>

Plaintiff has preserved his loan documents for use in this litigation

**GPM:** The loan origination files for both Loans have been preserved and GPM has voluntarily

produced both loan origination files to Plaintiff.

**CMC**:  CMC has preserved its documentation for use in this litigation.


7. <u>Disclosure/Discovery Plan</u>

Mr.Ouziz plans to conduct the discovery in the following areas:


Every "loan application" processed by GPM and CMC (both jointly and separately) showing a $16,750.00 monthly income (+ or - $3,000.00) along with names, addresses and phone numbers of those borrowers.

The names of any and all underwriters (current and non-current) at GPM and CMC with knowledge relevant to GPM's allegations.

Copies of all rate sheets and every documents describing what a "stated" income loan is and how GPM/CMC  processes these.

A description of GPM's damages as alleged in the Counterclaim and how GPM computed the figure.

GPM/CMC phone records for all relevant dates and times

A copy of every document in the Ouziz loan files including a copy of the front, inside, back and exterior file pages.

The name residence and business addresses and phone numbers and job position of all person(s) and entities who have knowledge of any facts relating to matters alleged in Ouziz's Complaint and GPM's Counterclaim. A general description of each individual's involvement and/or function (e.g. marketing, broker, realtor, appraiser, investor, funder, servicer, document preparation specialist, documents, disbursement of funds, etc.) and identify each and every written or recorded statement made by each of these person(s) and entities.

Each person who took part or who was present in the transmission and review of the "loan applications" as alleged in GPM's Counterclaim and identity of persons who are or were agents, independent contractors or employees of GPM and CMC.

The date and subject matter of any and all communications (oral or written):
a) between any of the parties to this action and/or other person or entity, in way relating to Ouziz or the Ouziz loan or the alleged Ouziz loan applications. All documents reflecting or relating to such communications, including but not limited to letters, faxes, notes, internal memoranda, calendars, computer data, credit applications and disclosures.

For the years 2004, 2005, 2006 and 2007 the total number of "stated income" loans any one or more of the following entered into or was involved with: CMC and GPM.  The identity in each case of the purchasing entity or person and the borrower's name, address and phone number and for each such borrower their monthly income.

The identity of each officer, director, partner, shareholder, incorporator, employee and/or founder of GPM and CMC, providing for each the ownership interest, full name, last known address and phone number.

The identity and detailed description of the underwriting procedures used, both generally and in the specific case of Ouziz in determining whether the information in the Ouziz file was accurate.

The description of each payment, disbursement or transfer of funds or other compensation made in connection with the Ouziz loan transaction including who was giving and who was receiving said payment, disbursement or transfer and the specific date, nature and amount thereof, as applicable.

The description of GPM's and CMC's marketing model, practices and communications applicable to the Ouziz loan transactions.

Description of each and every service or goods GPM and CMC believe CMC provided to Mr. Ouziz in connection with the Ouziz loans and the reasonable fair market value of those goods and services.

Explanation of the basis and/or the manner in which the payments made from GPM to CMC in conjunction with the Ouziz loans were calculated (e.g. percentage of loan amount, interest rate, specific services provided).

Explanation of the basis for and/or the manner for creating the three-year pre-payment penalty "Allonge." Detailed description of the reason the pre-payment Allonge was written on June 20, 2006, one day before Mr. Ouziz was scheduled to sign loan documents.

Identity of all agreements between GPM and GMAC corporation.  The number of residential mortgage loans assigned by GPM to GMAC in the last four years and identify which of those CMC was the broker and of these how many were "stated" income loans and of those how many have monthly incomes of approximately $16,750.00 (+ or - $3,000.00).

Statement of whether GPM and CMC have received any complaints (oral or written, whether or not filed with any judicial or administrative forum or consumer protection agency) from other borrowers in transactions in which either GPM or CMC was involved, and the identity of all individuals who made such complaints.

The identity of each person who has knowledge of the facts and/or who participated in the loan transaction, including, but not limited to, the person who reviewed the terms of the financing agreement, performed the calculations in arriving at the terms of the financing agreement and prepared any documents in connection with the transaction.

Statement as to whether any commission or other special remuneration was paid to any employee of GPM and CMC as a result of the loan transaction.

For each commission or other remuneration paid, a statement of:

  a.  The date each commission or other remuneration was paid:
  b.  The amount of commission or other remuneration and
  c.  How the amount of the commission or remuneration was determined

Identity of all documents prepared for or by received by or signed by Ouziz and statement of:

 a. The order in which those documents were signed by Ouziz
 b. Which of the documents contained blanks or were not completed at the time they were signed by  Ouziz; and which portions were left blank or incomplete;
 c. When and by whom the blanks or partially completed forms were filled in or completed; and
 d. Statement of whether Ouziz was advised by GPM/CMC if this was a "no-income" or "no-ratio" loan.

Statement of whether GPM or CMC provides training to new employees involved in brokering loans.

a. If so, description of all training content, time and duration.
b. If so, description of all documents and audio or visual materials used in such training.
c. If so, identity of each person involved in providing such training.

Statement of the total amount that Ouziz has paid to GPM and CMC either directly or indirectly in connection with the Ouziz loans.  Identity of each payment individually and the date of each payment.

Statement of length of employment of Amanda Rawls, Gwen Thrower, Kevin Nafai, David Moorman and Mauricia Rilling by either GPM or CMC. If no longer employed a statement of the reason why not.  Statement of their current address and telephone numbers.  If never employed by GPM or CMC detailed explanation.

If it is GPM or CMC's contention that Ouziz received a net tangible benefit as a result of the loan transaction(s), description to the best extent possible the facts that support that contention.

Full description of all the duties that CMC performed for or on behalf of Ouziz.

Identity of any document that GPM relied on in its answer or Counterclaim.  Identity of any documents that CMC relied on in forming its Answer.

All disclosure statements or other notices given by CMC or GPM regarding the Ouziz loan transaction.

All documents provided by GPM and CMC to Ouziz describing the terms of the loan transaction.

The loan application, loan worksheet, application worksheet or other document used in considering the application of Ouziz for the Ouziz loans.

The settlement statement, commitment letter, Good Faith Estimate and any work-sheet or other document used to prepare the federal disclosure statement in the loan transaction.

All written and recorded communications either by or to Ouziz in connection with the loan transactions.

All written or recorded communication either by or to any other Defendants in the present case in connection with the loan transaction.

All documents relating to any fees, commission or payments received by CMC and GPM in connection with the loan transaction in connection with the loan transaction from anyone other than the Plaintiff.

**CASE MANAGEMENT STATEMENT**

All contracts, agreements, correspondence, records of communication or other documents relating to an interaction with any loan broker who was paid in the loan transaction.

All materials used by GPM, its successor in interest and CMC and its successors in interest since January 1, 2004 to train its staff in conducting due diligence or otherwise reviewing loan files before acquiring loans.

All documents relating to any internal inspection procedures GPM and CMC used at the time of the loan transaction to insure that employees and agents were complying with internal underwriting guidelines and regulations.

Copy of the outside and inside front and back of the file folder on Ouziz's loan account.

Copies of both sides of every check issued or received in connection with the loan transaction.

All documents reflecting commission and/or bonuses paid to any individual including, but not limited to, payments to GPM's and CMC's employees, agents and any loan broker (or anyone) in connection with the loan transaction.

All documents related in any way to any criteria or system used to determine Ouziz's credit worthiness.

All documents, descriptions written and oral communications identifying describing and creating no-income and no-ratio loans issued by GPM and CMC since January 1, 2004 and identifying what is a no-income loan is.

All documents, descriptions written and oral communications identifying describing the difference between a no-ratio and a no-income loan and which loans do not require income.

All documents, descriptions written and oral communications identifying and describing whether Ouziz had a no-ratio, no-income or neither type of loan.  If GPM and CMC allege Ouziz had neither, all documents, descriptions written and oral communications identifying they type of loan product Ouziz was promised, was alleged to have applied for and received.

All documents used in choosing, determining, setting, changing or adjusting the interest rate in the transaction, including any documents related to how the amount of the interest rate relates to Ouziz's individual circumstances.

All documents used in describing what a stated income loan is.

All documents used in describing what a no-ratio loan is.

All documents used in describing what a no-income loan is.

**CASE MANAGEMENT STATEMENT**

Any and all documents contained in Ouziz's loan file.

Any and all documents which CMC or GPM intends to use or introduce at trial.

A copy of all relevant pooling and servicing agreements.

**GPM:**  To date, GPM has voluntarily provided the entire loan file to Plaintiff and has not received any of the documents that it requested from Plaintiff.  Based on the statements above, Plaintiff is seeking information that is not relevant and not likely to lead to admissible evidence.  Furthermore, these requests are extremely broad and incredibly burdensome.  Therefore, unfortunately GPM reasonably anticipates the possibility of some discovery issues based on the requests listed above.

**CMC**: CMC agrees with the statement from GPM and, based on the burdensome discovery listed by Plaintiff, reasonably anticipates the possibility of a discovery dispute. CMC will produce all documentation it has related to Plaintiff's loan.

9. <u>Related Cases</u>

None.

10. <u>Relief Sought By Plaintiff</u>

Mr. Ouziz has brought a total of 5 causes of action.  Under Count 1, against Defendant GPM, Mr. Ouziz seeks treble damages and costs for RESPA violations and for any other relief this court determines is just and appropriate.  Under Count 2, Mr. Ouziz seeks treble damages and costs for RESPA violations and for any other relief this court determines is just and appropriate.  Under Count 3, Mr. Ouziz seeks costs, treble damages and attorney's fees as against defendants GPM, Nafai, Rawls, Teeter and CMC.    Under Count 4, Mr. Ouziz seeks actual damages, imposition of a constructive trust upon the proceeds of the transactions as were paid to defendants CMC, Teeter, Rawls, Nafai. Under Count 5, as against Defendants CMC, Teeter,

Rawls and Nafai, Mr. Ouziz seeks actual damages for Deceit and such other relief to which Mr. Ouziz may be entitled, or as determined just and appropriate by this court.

**GPM:**  Pursuant to the claims alleged in the cross-complaint, GPM seeks damages from Plaintiff in the minimum amount of the principal balance of the loans ($612,000) as well as interest from the date of funding.  Furthermore, GPM seeks punitive damages based on the intentional acts of Plaintiff in fraudulently inflating his income on his loan applications.

**CMC**: CMC has not filed a counterclaim.

11. Settlement and ADR

Mr. Ouziz and Defendants GPM and CMC have had numerous conversations, including many in written e-mails about ADR and specifically Mediation.  Mr. Ouziz favors court-sponsored Mediation.

**GPM and CMC:**  GPM and CMC are agreeable to mediation.

12. Consent to Magistrate Judge for All Purposes and Other References

Mr. Ouziz has consented to a Magistrate Judge in this matter.

**GPM and CMC:** GPM and CMC have not consented to a Magistrate Judge in this matter.

**CASE MANAGEMENT STATEMENT**

13.  Narrowing of Issues

Parties have not been able to narrow issues.

14.  Expedited Schedule

Mr. Ouziz intends to bring a summary judgment motion. GPM and CMC intend to bring summary judgment and summary adjudication motions.

15.  Scheduling

Discovery cutoff to be completed by September 15, 2009 (2) Designation of Experts to be completed by July 15 2009, (3) Hearing of Dispositive Motions to be completed by April 15, 2009 and 4) Trial to be commenced October 15, 2009.

   **GPM:**  GPM takes no issue with the proposed schedule, other than to suggest moving the Hearing of Dispositive Motions to be completed by June 30, 2009.

   **CMC:**  CMC takes no issue with the proposed schedule, other than to suggest moving the Hearing of Dispositive Motions to be completed by June 30, 2009.

16.  Trial

Mr. Ouziz does request a jury trial and expects the trial length to be three days.

**GPM:**  GPM does not request a jury trial and expects trial to take no longer than 1-2 days.

**CMC:** does not request a jury trial and expects trial to take no longer than 1-2 days.

Dated: July 31, 2008                          **SCOTT FLAXMAN LAW**

                                              By: ___/ s /____ Scott A. Flaxman
                                                  **Scott A. Flaxman**
                                              Attorney for Plaintiff Marouane Ouziz

Dated: July 31, 2008                          By: _____/s/_____.
                                              EDWARD R. BUELL, III, ESQ.
                                              Attorney for Defendant and Cross-Complainant
                                              GreenPoint Mortgage Funding, Inc.

Dated:  July 31, 2008                         By: _____/s/_____
                                                  Timothy M. Blaine

                                                  Christopher M. Egan

                                                  Attorneys for Defendants Gregory Teeter,
                        Individually and as Agent for Captial Mortgage Corporation and Amanda
                        Rawls

**CASE MANAGEMENT STATEMENT**

1
2
3
4
5
6

**CERTIFICATE OF SERVICE**

7
8

I hereby certify that on July 31, 2008, I electronically transmitted the attached document to the
9   Clerk of Court using the ECF System for filing.

10
    s/Scott A. Flaxman_____
11  Scott A. Flaxman
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CASE MANAGEMENT STATEMENT**